**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

RONALD EGANA, SAMANTHA EGANA,
and TIFFANY BROWN, on behalf of
themselves and those similarly situated,

     Plaintiffs,

v.

BLAIR'S BAIL BONDS, INC., NEW
ORLEANS BAIL BONDS, L.L.C.,
BANKERS INSURANCE COMPANY,
INC., BANKERS SURETY SERVICES,
INC., BANKERS UNDERWRITERS INC.,
A2i, L.L.C., ALTERNATIVE TO
INCARCERATION, INC., and
ALTERNATIVE TO INCARCERATION
NOLA, INC.,

     Defendants.

Case No. 2:17-cv-5899-LMA-JVM

Section I

Class Action

## <u>RICO CASE STATEMENT</u>

Pursuant to this Court's RICO Standing Order, Plaintiffs provide the following

information in support of their RICO claims. Plaintiffs reserve the right to amend this

Statement as appropriate, including as more information is obtained through discovery.

**1.**    **RICO Sections Under Which Plaintiffs Assert Their Claims**

     A.    18 U.S.C. § 1962(c)

     B.    18 U.S.C. § 1962(d)

**2.**    **Identity of Each Defendant and the Alleged Misconduct and Basis for
Liability of Each Defendant**

     A.    Defendants and Their General Role:

       i.    <u>Blair's Bail Bonds, Inc. ("Blair's")</u>

Blair's serves as the bond agent, arranging for the provision of bail bond services to individuals who have been jailed in and around the Greater New Orleans area, including at least Orleans Parish, Jefferson Parish, and St. Bernard Parish, on behalf of itself, New Orleans Bail Bonds, and Bankers. Blair's maintains an office in New Orleans, which shares an address with New Orleans Bail Bonds. Blair's meets with potential clients to extend bail bonds and credit to pay for the bail premium and fees it charges. Blair's requires principals, whose release the bail bond secures, and indemnitors, usually family and friends of principals who agree to secure their obligations under the agreement arranged by Blair's, to sign the contract documents, working in part through its alter ego New Orleans Bail Bonds, and requires ankle monitors for some principals. Through its agents and employees, including bounty hunters, Blair's seizes and detains principals. Blair's communicates how much money is necessary to secure their release, tells them to call friends and family to bring the money, collects the money, and releases the person once it is paid. Blair's distributes money collected to the other enterprise members and others.

ii.  <u>New Orleans Bail Bonds, L.L.C. ("New Orleans Bail Bonds")</u>

Blair's shares a principal place of business with New Orleans Bail Bonds. The office is labeled only as Blair's, and employees identify themselves as Blair's employees. It is a contracting party involved in extending the bonds and thus is believed to receive money collected from principals and indemnitors.

iii.  <u>Bankers Insurance Company, Inc., Bankers Surety Services, Inc., and Bankers Underwriters, Inc. (collectively "Bankers")</u>

Bankers provides the insurance used to secure the bond with the court. It receives a portion of the money collected by Blair's agents and employees. It participates in setting the terms of the contracts signed by principals and indemnitors, identifying individuals who are behind in payments and need to pay, deciding how much money Blair's must collect from individuals to avoid jail, deciding when to install or remove ankle monitors, and determining when to surrender principals to jail.

Bankers Insurance Company, Inc. is listed as the surety on the bond paperwork. Bankers Surety Services, Inc. works with bail agents to provide bail services. Bankers Underwriters, Inc. appears to underwrite insurance services in Louisiana, as it is licensed with the Secretary of State of Louisiana.

iv.    A2i, L.L.C., Alternative To Incarceration, Inc., Alternative To Incarceration NOLA, Inc.  (collectively "A2i")

A2i provides the GPS ankle monitoring services used to monitor the location of defendants and find them for arrest. It also determines the ankle monitoring fees that will be collected by Blair's and A2i and receives money collected.

The entity servicing Plaintiff Ronald Egana's ankle monitor and participating in the affairs of the enterprise identified itself to Plaintiffs only as "Alternative To Incarceration" or "A2i." Plaintiffs do not know the different role or scope of these three A2i entities but believe each is associated with the provision of ankle monitoring services to principals with bail contracts through Blair's, New Orleans Bail Bonds, Bankers, and A2i (collectively, "the Bonding Defendants") and thus involved in the enterprise.

B.  Alleged Misconduct and Basis for Liability

     i.    <u>18 U.S.C. §1962(c) – Collection of unlawful debt</u>

When Blair's extends bail bonds, it charges principals a bail premium and other fees (collectively, "bail fees"). Blair's also requires some principals who enter such deferred payment agreements to wear an ankle monitor provided by A2i, even though no ankle monitoring was required as a condition of bond by the court. Blair's informs individuals of this requirement, made pursuant to the direction of the Enterprise on behalf of itself, New Orleans Bail Bonds, Bankers, and A2i. A2i charges $10 per day for its use as well as fees for reinstallation, resulting in payments that far exceed the legally allowed interest rate. Blair's collects payments for these fees from the principal and indemnitors.

Based on the $1660 balance owed on the bond by Named Plaintiffs at the time the credit was extended, daily monitoring fees, and installation fees result in an annual interest rate of over 200%. The fees imposed create a usurious rate under Louisiana law for Named Plaintiffs and the Class, is more than double the enforceable rate, and therefore constitutes an unlawful debt as defined by 18 U.S.C. § 1961(6).

     ii.    <u>18 U.S.C. §1962(c) – Pattern of racketeering activity</u>

Blair's, New Orleans Bail Bonds, A2i, and Bankers violated 18 U.S.C. §1962(c) through the conduct of an enterprise by engaging in a pattern of extortion (state law under 18 U.S.C. § 1961(1)(A); 18 U.S.C. § 1951 (Hobbs Act); 18 U.S.C. § 1952 (Travel Act)); extortionate collection of an extension of credit (18 U.S.C. § 894); and kidnapping (18 U.S.C. § 1961(1)(A)).

Blair's, in its own name and through its alter ego New Orleans Bail Bonds, and acting as an agent of the surety Bankers, utilizes a standard contract that provides that

"[t]he Defendant and the Indemnitor(s) further understand and agree that the Company, as surety, shall have control and jurisdiction over the Defendant during the term for which the bond is executed, and that the Company has the right to surrender the Defendant on this bond at any time the company so desires, in accordance with the law."

Blair's bounty hunters routinely threaten to and actually arrest principals, transport them to the Blair's office, and refuse to release principals to force the principal's indemnitors to pay money to Blair's. In these instances, Blair's does not surrender principals to the jail. Rather, they hold the principals at Blair's office against their will until they or their indemnitors pay the amount of money that Blair's deems satisfactory. Blair's employees also threaten to surrender principals to jail unless they or their indemnitors pay the amounts demanded. In cases where principals have been required to wear ankle monitors provided by A2i, those ankle monitors are used to find principals to arrest them, and a portion of the amounts collected are paid to A2i.

    iii.   <u>18 U.S.C. §1962(d)</u>

Blair's, New Orleans Bail Bonds, A2i, and Bankers violated 18 U.S.C. §1962(d) by conspiring with one another to conduct the affairs of the enterprise through the collection of unlawful debt from Plaintiffs and the Unlawful Debt Class, and through a pattern of racketeering activity by kidnapping Plaintiff Egana and others to obtain money from members of the putative Kidnapping and Extortion Class (La. Stat. Ann. §14:44-45); extorting Plaintiffs and members of the putative Kidnapping and Extortion Class (Hobbs Act, 18 U.S.C. § 1951; La. Stat. Ann. § 14:66; Travel Act, 18 U.S.C. §1952); and engaging in the extortionate collection of an extension of credit from Plaintiffs and the

putative Kidnapping and Extortion Class (18 U.S.C. § 894), as described in section 2.B.ii, *supra*.

**3. Alleged Wrongdoers Other than Defendants and Alleged Misconduct**

A. Marcel Compass:

An employee of Blair's, Compass arranges for bail bond services and ankle monitoring for principals. Compass helps to orchestrate the kidnapping of principals and the extortion of the principals and indemnitors.

B. Alroy Allen:

A bounty hunter employed by Blair's, Allen threatens to kidnap and kidnaps principals on behalf of Blair's.

C. Non-Defendant Officers, Employees, Agents and/or Representatives of Defendants:

Other individuals whose identities and/or specific role in the enterprise are unknown at this time are believed to have participated in, facilitated and/or supported the racketeering acts at the behest of Defendants or in their capacity as Defendants' agents, employees, and/or representatives.

**4. Alleged Victims and Injuries**

Plaintiffs include Ronald Egana and his close friend, Tiffany Brown, and mother, Samantha Egana, who signed a contract and payment agreement with the Bonding Defendants. Mr. Egana, as principal, and Ms. Brown and Ms. Egana, as indemnitors, signed an agreement to pay the bail fee needed to secure Mr. Egana's bail in a down payment and then through installment payments. Mr. Egana was told he must wear an ankle monitor until he paid a sufficient sum towards his bail fee, and was charged an

installment fee and daily $10 fees. On three different occasions, Defendants arrested Mr. Egana, transported him to their office, and demanded money from Plaintiffs for his release.  Plaintiffs paid fees in excess of what they originally contracted to pay because of the extortion and kidnapping and the continued threat of those actions.

Plaintiffs bring their RICO claims on behalf of two classes of persons:

**Unlawful Debt Class**, defined as: All individuals who enter or entered into an agreement with the Defendants as a "principal" or an "indemnitor" for the provision of bail bond services, where the principal was required to wear an ankle monitor and the principal and indemnitors are or were required to pay a fee for the ankle monitor. This class alleges damages based on Defendants' collection of unlawful debt through the ankle monitoring provided by the Defendants.

**Kidnapping and Extortion Class**, defined as: All individuals who entered into an agreement with the Defendants as a "principal" or an "indemnitor" for the provision of bail bond services, where the principal was arrested and held against his or her will by Defendant Blair's for non-payment of the balanced owed on the bail premium.  This class alleges damages based on Defendants' extortion and kidnapping actions.

Plaintiffs and other victims have suffered significant injuries to their business and/or property as a result of Defendants' collection of unlawful debt, racketeering activities, and conspiracy to commit racketeering activities, including through the payment of fees collected by Defendants that constituted unlawful debt or were collected by extortion and kidnapping.  Plaintiff Ronald Egana was fired from his job as a result of Defendants' actions.

**5. Collection of Unlawful Debt or Pattern of Racketeering**

A. Alleged Predicate Acts and Collection of Unlawful Debt

Collection of Unlawful Debt (18 U.S.C. § 1961(6)); Kidnapping under Louisiana state law (18 U.S.C. § 1961(1)(A) and La. Stat. Ann. §§ 14:44, 14:45); extortion under Louisiana state law (18 U.S.C. § 1961(1)(A) and La. Stat. Ann. § 14:66); extortion under Hobbs Act (18 U.S.C. §1951); extortion under Travel Act (18 U.S.C. § 1952); and extortionate collection of an extension of credit (18 U.S.C. § 894).

B. Dates, Participants in, and Description of the Predicate Acts and Collection of Unlawful Debt

    i. <u>Collection of Unlawful Debt</u>

        a. Dates:

            i. June 2013 through the present for the Unlawful Debt Class

            ii. Beginning on or about June 17, 2016, for Plaintiffs

        b. Participants: Defendants Blair's, New Orleans Bail Bonds, Bankers, and A2i

        c. Facts: The facts forming the basis for the collection of unlawful debt are detailed in ¶¶ 28 through 86 of the Complaint, which are incorporated herein by reference. In summary, the Defendants, through their RICO enterprise, entered into payment agreements with Plaintiffs and other class members to defer payment of bail bond premiums and other fees. As part of this extension of credit, Defendants required the payment of additional fees, including ankle monitoring fees. These fees

create a usurious rate under Louisiana law for Named Plaintiffs
and the Class, and are more than double the enforceable rate.

d.  These alleged acts relate to the enterprise as part of a common
plan to charge and collect money from Plaintiffs and  members
of the putative Unlawful Debt Class.

ii.  <u>Kidnapping under Louisiana law (18 U.S.C. § 1961(1)(A)): Simple
kidnapping (La. Stat. Ann. §14:45) and aggravated kidnapping (La.
Stat. Ann. §14:44)</u>

a.  Dates:

i.  June 2013 through the present for the Kidnapping and
Extortion Class

ii.  Beginning on or about September 27, 2016, for
Plaintiffs

b.  Participants: Defendants Blair's, New Orleans Bail Bonds,
Bankers, and A2i

c.  Facts: The facts forming the basis for the predicate act of
kidnapping are detailed in ¶¶ 28 through 86 of the
Complaint, which are incorporated herein by reference. In
summary, the Defendants, through their RICO enterprise,
entered into payment agreements with Plaintiffs and other
class members for the payment of bail bond premiums and
other fees, then kidnapped Plaintiff Egana and members of
the Kidnapping and Extortion Class by intentionally and
forcibly seizing them without their consent and carrying

them from the place of arrest to the Blair's office where they were kept against their will. Defendants did this with the intent to obtain money from Plaintiffs and members of the Kidnapping and Extortion Class both through acts of kidnapping and extortion and the continued threat thereof.

d. These alleged predicate acts relate to the enterprise as part of a common plan to charge and collect money from Plaintiffs and members of the Kidnapping and Extortion Class.

iii. Extortion under Louisiana state law (18 U.S.C. § 1961(1)(A) and La. Stat. Ann. § 14:66)

i. Dates:

i. June 2013 through the present for the Kidnapping and Extortion Class

ii. Beginning on or about September 27, 2016, for Plaintiffs

b. Participants: Defendants Blair's, New Orleans Bail Bonds, Bankers, and A2i.

c. Facts: The facts forming the basis for the predicate act of extortion are detailed in ¶¶ 28 through 86 of the Complaint, which are incorporated herein by reference. In summary, the Defendants, through their RICO enterprise, obtained payment of bail bond fees, including fees for ankle monitoring, from Plaintiffs and members of the putative Kidnapping and Extortion Class by detaining

principals and then threatening them with jailing if they failed to make payments. Defendants arrested principals, told them to come up with certain amounts of money to avoid jail, and told them to call their family members. Defendants did this with the intent to obtain money from Plaintiffs and members of the Kidnapping and Extortion Class both through acts of kidnapping and extortion and the continued threat thereof.

d.      These alleged predicate acts relate to the enterprise as part of a common plan to charge and collect money from Plaintiffs and members of the Kidnapping and Extortion Class.

iv.      <u>Extortion under Hobbs Act (18 U.S.C. § 1951)</u>

a.  Dates:

i.  June 2013 through the present for the Kidnapping and Extortion Class

ii.  Beginning on or about September 27, 2016, for Plaintiffs

b.      Participants:  Defendants Blair's, New Orleans Bail Bonds, Bankers, and A2i.

c.      Facts:  The facts forming the basis for the predicate act of extortion are detailed in ¶¶ 28 through 86 of the Complaint, which are incorporated herein by reference.  In summary, the Defendants, through their RICO enterprise, obtained payment of bail bond fees, including fees for ankle monitoring, from Plaintiffs and members

of the putative Kidnapping and Extortion Class by detaining principals and then threatening them with jailing if they failed to make payments. Defendants arrested principals, told them to come up with certain amounts of money to avoid jail, and told them to call their family members. Defendants did this with the intent to obtain money from Plaintiffs and members of the Kidnapping and Extortion Class both through acts of kidnapping and extortion and the continued threat thereof. The proceeds of the Defendants' extortionate activities were used in commerce and prevented Plaintiffs from purchasing other goods in interstate commerce, and therefore affected commerce or the movement of any article or commodity in commerce, as these terms are understood by 18 U.S.C. § 1951(a).

d.  These alleged predicate acts relate to the enterprise as part of a common plan to charge and collect money from Plaintiffs and members of the Kidnapping and Extortion Class.

v.  <u>Extortion under Travel Act (18 U.S.C. § 1952)</u>

a.  Dates:

i.  June 2013 through the present for the Kidnapping and Extortion Class

ii.  Beginning on or about September 27, 2016, for Plaintiffs

b.    Participants:  Defendants Blair's, New Orleans Bail Bonds, Bankers, and A2i.

c.    Facts:  The facts forming the basis for the predicate act of extortion are detailed in ¶¶ 28 through 86 of the Complaint, which are incorporated herein by reference.  In summary, the Defendants, through their RICO enterprise, obtained payment of bail bond fees, including fees for ankle monitoring, from Plaintiffs and members of the putative Kidnapping and Extortion Class by detaining principals and then threatening them with jailing if they failed to make payments. Defendants arrested principals, told them to come up with certain amounts of money to avoid jail, and told them to call their family members. Defendants did this with the intent to obtain money from Plaintiffs and members of the Kidnapping and Extortion Class both through acts of kidnapping and extortion and the continued threat thereof. Defendants, through the RICO Enterprise, have traveled in interstate commerce, and have used the mail, GPS, and other facilities in interstate commerce to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of an extortionate scheme.

d.    These alleged predicate acts relate to the enterprise as part of a common plan to charge and collect money from Plaintiffs and members of the Kidnapping and Extortion Class.

v.      Extortionate Collection of an Extension of Credit (18 U.S.C. § 894)

a.      Dates:

   i.      June 2013 through the present for the Kidnapping and Extortion Class

   ii.      Beginning on or about September 27, 2016, for Plaintiffs

b.      Participants:  Defendants Blair's, New Orleans Bail, and Bankers.

c.      Facts:  The facts forming the basis for the predicate act of extortionate collection of an extension of credit are detailed in ¶¶ 28 through 86 of the Complaint, which are incorporated herein by reference.  In summary, the Defendants, through their RICO enterprise, obtained payment of bail bond fees, including fees for ankle monitoring, from Plaintiffs and members of the putative Kidnapping and Extortion Class by detaining principals and then threatening them with jailing if they failed to make payments. Defendants arrested principals, told them to come up with certain amounts of money to avoid jail, and told them to call their family members. Defendants did this with the intent to obtain money from Plaintiffs and members of the Kidnapping and Extortion Class both through acts of kidnapping and extortion and the continued threat thereof.

d.    These alleged predicate acts relate to the enterprise as part of a common plan to charge and collect money from Plaintiffs and members of the Kidnapping and Extortion Class.

**6.    Description of the Enterprises**

A.    All Defendants are members of the enterprise, who work by and through their agents and employees.

B.    Information about the structure, purpose, roles, function, and course of conduct of the enterprise is provided in the Complaint at ¶¶ 103 - 112, which is incorporated herein by reference.  In summary, the enterprise is an association-in-fact between and among each of the Defendants. Blair's arranges to provide bail bond services and credit for bail fees to principals and indemnitors, working in part through its alter ego, New Orleans Bail Bonds. Blair's requires principals and indemnitors to sign contract documents and wear ankle monitors. Blair's employs bounty hunters who seize and detain principals. Blair's communicates how much money is required to secure the principals' release and requires principals to call friends and family, including indemnitors, to bring money. Blair's collects the money and distributes it to other enterprise members and others. Bankers underwrites the bail bonds serviced by Blair's, participates in setting the terms of the contracts signed by principals and indemnitors, identifying individuals who need to pay, deciding how much money to require in exchange for the principals' release, when to install and remove ankle monitors, and when to surrender principals to jail. A2i provides ankle monitors that are used to locate principals for arrest and determines the amount charged for use of the ankle monitor. All defendants profit from the conduct of the enterprise.

C.  None of the Defendants are employees, officers, or directors of the enterprise.

D.  The enterprise is an association-in-fact enterprise.  As set forth in subsection (A), *supra*, all of the Defendants are associated with the enterprise.

E.  The Defendants are entities legally separate from the enterprise.  The Defendants are each members of the enterprise.

F.  Defendants are each perpetrators of the alleged racketeering activity and collection of unlawful debt through their roles in the enterprise, as outlined in Section 2.

**7.  Separate Nature of the Enterprise and Racketeering Activity**

The participants in this enterprise worked in consort with the common purpose of providing bail bonds and related services to Plaintiff Ronald Egana and other individuals who were jailed and required money bail to secure their release pretrial, and charging those principals and their indemnitors for these services

**8.  Alleged Relationship Between the Activities of the Enterprise and the Pattern of Racketeering Activity**

The Defendants kidnapped, extorted, engaged in the extortionate collection of debt, and collected unlawful debt, in the course of conducting the otherwise non-racketeering activity of providing bail bond services to individuals who were jailed pretrial. The Defendants engaged in both illegal and legitimate activities to further this purpose. Therefore, the "usual and daily activities" of this enterprise included but were not solely comprised of racketeering activities.

**9.     Benefits Received by the Enterprise from the Alleged Pattern of Racketeering Activity**

The members of the enterprise enjoyed substantial financial profits from their racketeering activities. By engaging in extortion and kidnapping, the Defendants collected considerable sums of money from members of the putative Kidnapping and Extortion Class—oftentimes more than they had contracted to repay and more than twice the amount that was allowed by law.

**10.     Effect of the Activities on Interstate Commerce**

The enterprise and Defendants identified in this action have conducted the racketeering activities and other business activities relevant to this action through interstate travel, movement of money, and communications, and use of interstate facilities.  Most of the activities took place in Louisiana.  Bankers, which underwrites the bail bonds arranged by Blair's and obtained money through the enterprise's activities, is domiciled in Florida and has a principal place of business in Florida.  Defendants used mail, telephone, wires, credit card payments, and GPS monitoring systems to carry out their activities, including requiring principals to call family members to obtain money for their release.  In addition, Defendants' extortionate activities deprived Plaintiffs and the putative Class of financial assets and prevented them from purchasing other goods in interstate commerce.

**11.     Allegations Specific to 18 U.S.C. § 1962(a)**

Not applicable.

**12.     Allegations Specific to 18 U.S.C. § 1962(b)**

Not applicable.

**13.    Allegations Specific to 18 U.S.C. § 1962(c)**

A.    All Defendants have associated together as an association-in-fact, and therefore an enterprise within the meaning of 18 U. S. C. § 1961(4).

B.    The liable Defendant "persons" are separate and distinct entities from the enterprise alleged above.

**14.    Allegations Specific to 18 U.S.C. § 1962(d) (Description of the Alleged Conspiracy)**

The allegations forming the basis for 18 U.S.C. § 1962(d) are set forth in Section 2. In summary, as the bond agent, Blair's arranges for the provision of bail bond services and charges bail bond fees to principals and indemnitors, operating in its own name and through its alter ego, New Orleans Bail Bonds. When principals and indemnitors cannot afford to pay the bail bond fees at the outset, Blair's offers credit in the form of deferred payment plans and requires that principals wear an ankle monitor. A2i supplies the ankle monitors and sets the $10 per day fee for its use and reinstallation fees when applicable. Blair's agents and employees collect money from principals and indemnitors, employing bounty hunters who seize and detain principals for this purpose. Blair's communicates how much money is necessary to secure the principals' release, tells them to call friends and families to bring money, collects money, releases the person once money is paid, and distributes money to the other members of the enterprise. Bankers provides the insurance used to secure the bond with the court and participates in setting terms for the contracts signed by principals and indemnitors and deciding who needs to pay in what amount to avoid jail, when to install or remove ankle monitors, and when to surrender principals to

jail. Bankers, Blairs, and A2i all receive money collected by Blair's pursuant to this arrangement.

**15.      Alleged Injury to Business or Property**

Plaintiffs have suffered significant injuries to their business and/or property as a result of Defendants' racketeering activities including: payment of unlawful debt to Defendants, payment of excessive fees charged by Defendants, and payment of money extorted by Defendants, lost work and professional opportunities, and other harm to business and property.

**16.      Relationship Between Injuries and Violations of RICO**

The Defendants' collection of unlawful debt directly caused Plaintiffs to pay to the Defendants usurious ankle monitor fees as a condition of extending credit toward the premium charged on the bail bond in the amount of $10/day for every day the Plaintiffs owed money on the credit agreement.

The Defendants' acts of kidnapping, extortion, and extortionate collection of extension of credit effectuated and directly induced Plaintiffs to pay exorbitant sums of money to the Defendants by intentionally and forcibly seizing Mr. Egana and other principals in the Kidnapping and Extortion Class without their consent and carrying them from the place of arrest to the Blair's office where they were kept against their will with the intent to obtain money from the Plaintiffs (principals and their indemnitors). The Defendants arrested and detained the principals, told them to come up with certain amounts of money to avoid jail, and told them to call their family members. The Defendants threatened principals with arrest with the intent of obtaining money from them or their indemnitors. The Defendants obtained payments from Plaintiffs and the

putative Kidnapping and Extortion Class through the above acts. After being detained and/or threatened by the Defendants, Plaintiffs and members of the putative Kidnapping and Extortion Class incurred substantial debts, lost wages, and lost work and professional opportunities.

**17.    Damages Sustained by Reason of RICO Violations Attributable to Each Defendant**

Damages Resulting from Defendants' Collection of Unlawful Debt RICO Violation:

Defendants engaged in the collection of unlawful debt through charging and collecting on the $10 per day ankle monitoring fee. The Named Plaintiffs paid at least $6,000 to Defendants as a result of this collection of unlawful debt as well as Defendants' pattern of extortionate behavior. Because of Defendants' refusal to provide a consistent account to Named Plaintiffs of how these payments were applied, it is unclear what amounts were applied towards the principal owed ($1660) and how these amounts were distributed among the Defendants without the benefit of discovery. Nevertheless, Defendants are jointly and severally liable to Plaintiffs for the damages they suffered.

As for members of the putative Unlawful Debt Class, each principal was charged $10 per day for ankle monitor, for which principals and indemnitors were all liable. The damages sustained constitute any amount paid by each Plaintiff (principal or indemnitor) toward the daily ankle monitor usage fees as well as the installation fee (if applicable) charged by the Defendants.

Damages as a Result of Defendants' Kidnapping, Extortion, and Extortionate Collection of Extension of Credit RICO Violations:

Plaintiffs, including the Kidnapping and Extortion Class, suffered damages as a result of Defendants conducting or participating in and conspiring to conduct the affairs

of the RICO enterprise by subjecting them to kidnapping, as well as repeated instances of extortion, and extortionate collection of extension of credit. The Plaintiffs' damages include, but are not limited to, money that was obtained through the arrest, detention, and threat of jailing of principals; lost wages as a result of arrest and detention; and lost work and professional opportunities. Named Plaintiffs paid over $4000 as a result of Defendants' acts of kidnapping and extortion,[1] and Ronald Egana lost his job.

With respect to these predicate acts, the Defendants are jointly and severally liable for damages.

All Violations

With respect to all Defendants' RICO violations, Plaintiffs seek treble damages available pursuant to 18 U.S.C. § 1964(c), plus costs and attorneys' fees associated with bringing this action.

**18.    All Other Federal Causes of Action**

The Plaintiffs bring the following additional federal claims in this action: Truth In Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*

**19.    Pendent State Law Claims**

The Plaintiffs assert the following state claims:

A.    Louisiana Racketeering Act, La. Stat. Ann. §§ 15:1351 *et seq.*

B.    False Imprisonment

C.    Conversion

D.    Louisiana state contract law

---

[1] Because of the Defendants' failure to provide accurate accounting to Named Plaintiffs, a more specific amount cannot be calculated current without the benefit of discovery.

**20.     Additional Helpful Information**

Plaintiffs are not aware of any additional information which may be helpful at this time. Plaintiffs may seek to amend this Case Statement at a later date should additional useful information come to light.


DATED this 17th day of July, 2017.        Respectfully submitted,

                                /s/ Ivy Wang

Ivy Wang
*On Behalf of Plaintiffs' Counsel*

Ivy Wang
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue, Suite 505
New Orleans, Louisiana 70130
P: 504-486-8982
F: 504-486-8947
E: ivy.wang@splcenter.org

Caren E. Short*
Sara Zampierin*
Samuel Brooke*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
P: 334-956-8200
F: 334-956-8481
E: caren.short@splcenter.org
E: sara.zampierin@splcenter.org
E: samuel.brooke@splcenter.org

*admitted pro hac vice*

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on this day a copy of the foregoing document was served via

U.S. mail on the following:

    Blair's Bail Bonds, Inc.
    c/o Blair Boutte, Registered Agent
    2767 Tulane Avenue, New Orleans, LA 70119

    New Orleans Bail Bonds, L.L.C.
    c/o Ronald Yost, Registered Agent
    2767 Tulane Avenue, New Orleans, LA 70119

    Bankers Insurance Company, Inc.
    c/o Lydia Boakye, Registered Agent
    11101 Roosevelt Blvd. N., St. Petersburg, FL 33716

    Bankers Surety Services, Inc.
    c/o Richard G. Torra, Registered Agent
    11101 Roosevelt Blvd. N., St. Petersburg, FL 33716

    Bankers Underwriters, Inc.
    c/o Corporation Service Company, Registered Agent
    501 Louisiana Avenue, Baton Rouge, LA 70802

    A2I, L.L.C.
    c/o Van Hopkins, Registered Agent
    315 Austin Street, Bogalusa, LA 70427

    Alternative to Incarceration, Inc.
    c/o Matthew E. Dennis, Registered Agent
    79316 Highway 41, Bush, LA 70431

    Alternative to Incarceration NOLA, Inc.
    c/o Robert Dennis, Registered Agent
    102 E Cuevas Street, Belle Chasse, LA 70037


Dated this July 17, 2017.                    /s/ Ivy Wang
                                             Ivy Wang