IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RONALD EGANA, SAMANTHA EGANA, and TIFFANY BROWN, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BLAIR'S BAIL BONDS, INC., NEW ORLEANS BAIL BONDS, L.L.C., et al. <br><br> Defendants, | CASE NO. 2:17-CV-5899-JTM-DEK <br><br> SECTION <br><br> JUDGE MILAZZO <br><br> MAGISTRATE KNOWLES |

**BLAIR'S BAIL BONDS, INC. AND NEW ORLEANS BAIL BONDS, LLC'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
THIRD AMENDED COMPLAINT UNDER RULE 12(B)(6)**

This Court should dismiss plaintiffs' Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and Louisiana Racketeering Act claims because plaintiffs have not alleged sufficient facts to establish those claims in their Third Amended Complaint and Third Amended RICO Case Statement. Blair's and New Orleans Bail Bonds (collectively, the "Blair's Defendants") previously moved to dismiss these claims as contained in Plaintiffs' Second Amended Complaint (Doc. 129) and that Motion is still pending. Plaintiffs' Third Amended Complaint is very similar to their Second Amended Complaint, except that Plaintiffs have eliminated many of their claims against the Bankers' Defendants. Accordingly, this Memorandum largely tracks the Blair's Defendants' prior Memorandum in Support of their prior Motion to Dismiss (Doc. 128-1).

**PROCEDURAL HISTORY**

Plaintiffs originally filed their First Complaint in the Eastern District of Louisiana on June 16, 2017. That matter was allotted to this court in Case No. 17-05861 (Judge Milazzo).

1

3297752-1

Later that same day, plaintiffs filed a second Complaint involving this same subject matter in the Eastern District, Case No. 17-05899 (Judge Africk). In filing the second case, plaintiffs *de facto* amended their pleading, which was originally allotted to this section by dropping one defendant and adding others. Plaintiffs then voluntarily dismissed suit No. 17-05861 (Case No. 17-05861, Doc. 4). Judge Africk later transferred the second suit to this section of the Court, where the first suit was originally allotted (Doc. 11).

After the Blair's Defendants filed their Motion to Dismiss in this case on August 22, 2017 (Doc. 20), plaintiffs filed yet another Amended Complaint (Doc. 26). On June 1, 2018, this Court granted the Motion to Dismiss as to the RICO and Louisiana Racketeering Act claims (Doc. 122), finding that the allegations regarding the named Plaintiffs were insufficient to establish the pattern requirement.

On June 21, 2018, Plaintiffs filed a Second Amended Complaint which re-asserted the RICO claims (Doc. 128). The Blair's Defendants filed a Motion to Dismiss as to Plaintiffs' Second Amended Complaint, which is pending before this Court (Doc. 139-1).

Plaintiffs then filed a Third Amended Complaint on December 12, 2018, eliminating most of their claims against the Bankers Insurance Defendants (Doc. 188), but otherwise largely repeating their insufficient allegations against the Blair's Defendants.

Plaintiffs' RICO and Louisiana Racketeering Act claims in their Third Amended Complaint, similar to those in the prior iterations of their Complaint, should be dismissed because their allegations are insufficient as a matter of law.

## FACTUAL BACKGROUND

The Blair's Defendants detailed the factual background of the matter in their Memorandum in Support of their original Motion to Dismiss (Doc. 20-1) and, instead of repeating those facts here, incorporate them by reference.

In their Third Amended Complaint, Plaintiffs again allege wrongdoing with respect to three the same three previously identified bail bond clients, in addition to Mr. Egana. They allege that Reynard Variste entered into bail bond agreements with the defendants in 2013, entered into a bail bond agreement with the defendants in 2016, and continued to pay on these bonds until early 2017 (Doc. 188, ¶¶ 106-08). They allege that Chad Lightfoot entered into a bail bond agreement with the defendants in December 2016 and continued to pay on this bond until June 2017 (Doc. 188, ¶¶ 109-14). They also allege that Joseph Winzy entered into a bail bond agreement with the defendants in 2017 and continued to pay on this bond during that year (Doc. 188, ¶ 115). Plaintiffs do not allege that any of these three individuals were arrested and allege that only Mr. Variste and Mr. Lightfoot were placed in handcuffs (Mr. Winzy was not). Finally, Plaintiffs also make general allegations regarding "[o]ther principals and indemnitors" who were allegedly victimized bit are unnamed (Doc. 188, ¶ 116).

These allegations do not save Plaintiffs' RICO claims, and those claims should be dismissed for the same reasons that the Court found in previously dismissing these flawed claims (Doc. 122).

## LEGAL STANDARD

The Blair's Defendants incorporate by reference the legal standards for deciding a Rule 12(b) Motion to Dismiss, as detailed in these defendants' original Memorandum in Support of Motion to Dismiss (Doc 20-1, pp. 4-5).

**ARGUMENT**

I. **Plaintiffs failed to sufficiently plead required elements of their Federal RICO and Louisiana Racketeering claims in any of their four Complaints, and this Court should therefore dismiss those claims with prejudice.**

The elements of a Federal RICO claim under 18 U.S.C. § 1962(c) claim are (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.[1]

1. **Plaintiffs have failed to establish a pattern.**

A RICO plaintiff must establish a pattern of racketeering activity. *Calcasieu*, 943 F.2d at 1463. In order to establish a pattern, plaintiffs must allege and ultimately establish a relationship between the predicate offenses and the threat of continued activity. *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016). This second component is known as the continuity element. There are two ways to demonstrate continuity: "(1) a closed period of repeated conduct; or (2) an open-ended period of conduct that by its nature projects into the future with the threat of repetition." *Id.*, quoting *H.J. Inc. v. New Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (internal quotations omitted).

Here, plaintiffs fail to establish closed-ended continuity where the alleged racketeering activity occurred within approximately one year, between May 26, 2016 and June of 2017. Continuity is centrally a temporal concept, and a closed period of repeated conduct requires predicate acts that extend over a "substantial period of time." *H.J. Inc.*, 492 U.S. at 242. Circuit courts have routinely found that periods like the one that Plaintiffs allege here fall short of the continuity requirement under RICO. *See*, *e.g., Wisdom v. First Midwest Bank*, 167 F.3d 402, 407

---

[1] Plaintiffs' claim under the Louisiana Racketeering Act (La. R.S. § 15:1351 *et seq.*) is based on many of the same predicate acts asserted in their federal RICO claim. The Louisiana Racketeering Act is modeled on the federal RICO statutes, and thus federal decisions are persuasive authority. *See Zilbert v. Sasol North America, Inc.*, 2012 U.S. Dist. LEXIS 74920 (W.D. La. May 25, 2012); *State v. Touchet*, 759 So.2d 194, 197 (La. Art. 3d Cir. 2000). Thus, plaintiffs' Louisiana Racketeering Act claim fails for the same reason as their federal RICO claims, and this Court should dismiss that claim as well.

(8th Cir. 1999) (ten months insufficient); *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995) (twelve months insufficient); *Tel-phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992) (seven months insufficient). In fact, the Second Circuit has stated that "it will be rare that conduct persisting for a shorter period of time [than two years] establishes closed-ended continuity, particularly where the activities alleged involved only a handful of participants and do not involve a complex, multi-faceted conspiracy." *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("sixteen-month period of time is insufficient to establish closed-ended continuity--particularly in the absence of separate schemes or large numbers of participants and victims."). Plaintiffs cannot and do not dispute that federal courts routinely hold that similar periods are insufficient to establish closed-ended continuity under RICO. Furthermore, Plaintiffs cannot and do not dispute that sporadic and isolated conduct does not suffice to establish closed-ended continuity. *See Conry v. Daugherty*, No. 10-4599, 2011 U.S. Dist. LEXIS 117144, at *6 (E.D. La. Oct. 11, 2011).

The only activity which Plaintiffs complain that may be outside the one-year time frame are alleged threats communicated to Mr. Variste's aunt in relation to a bond issued in 2013.[2] However, plaintiffs provide no specificity with respect to the timing of these alleged threats, and plaintiffs admit that amounts were owed on Mr. Variste's 2013 bond at least until early 2017 (Doc. 188, ¶¶ 106-108). Sporadic and isolated conduct does not suffice to establish closed ended continuity. *See Conry v. Daugherty*, No. 10-4599, 2011 U.S. Dist. LEXIS 117144, at *6 (E.D. La. Oct. 11, 2011) (alleged predicate acts occurring from January 2007 to April 2007 and from September 2010 to January 2011 were insufficient).

---

[2] Plaintiffs' claim under the Louisiana Racketeering Act (La. R.S. § 15:1351 *et seq.*) is based on many of the same predicate acts asserted in their federal RICO claim. The Louisiana Racketeering Act is modeled on the federal RICO statutes, and thus federal decisions are persuasive authority. *See Zilbert v. Sasol North America, Inc.*, 2012 U.S. Dist. LEXIS 74920 (W.D. La. May 25, 2012); *State v. Touchet*, 759 So.2d 194, 197 (La. Art. 3d Cir. 2000). Thus, plaintiffs' Louisiana Racketeering Act claim fails for the same reason as their federal RICO claims, and this Court should dismiss that claim as well.

Plaintiffs also fail to allege the less common open-ended continuity. *See Malvino*, 840 F.3d at 232. An open-ended period of conduct involves a threat of continued racketeering activity that may be established by showing that (1) there is a specific threat of repetition extending indefinitely into the future; or (2) that the predicates are a regular way of conducting a defendant's ongoing legitimate business. *Id.* The Fifth Circuit applies a particularly restrictive view of open-ended continuity. *See Word of Faith World Outreach Ctr. Church v. Sawyer*, 90 F.3d 118, 123 n.4 (5th Cir. 1996) (the Fifth Circuit upheld dismissal of RICO claims even though other circuits might not have). Plaintiffs make the conclusory assertion that "threats of arrest or actual arrests" are "part of Defendants' regular way of doing business and are likely to continue into the future" (Doc. 188, ¶ 105). However, the alleged predicate acts occurred during a limited, one year time frame and only relate to approximately five (5) bonds. Blair's writes thousands of bonds each year. These allegations simply do not establish an open-ended period of conduct that projects into the future with the threat of repetition. In *H.J. Inc.*, the Supreme Court explained "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement [of continuity because] Congress was concerned in RICO with long term criminal conduct." 492 U.S. 229, 242, 109 S.Ct. 2893, 2902. *See also*, *Edwards v. First Nat'l Bank*, 872 F.2d 347, 350 (10th Cir. 1989) (threats made on different occasions by employees of two banks to send borrowers to jail if they did not repay their loans did not reflect a RICO pattern).

Moreover, no threat of continuity existed or exists. Blair's did not require ankle monitors, but simply offered them as an option in place of collateral. Currently, ankle monitors are only used for cases where they are court-ordered. In particular, no threat of continuity now exists with respect to either Mr. Variste or Mr. Lightfoot, who are now incarcerated. In addition, while

Plaintiffs cite alleged predicate acts against anonymous criminal defendants and/or indemnitees, Plaintiffs fail to allege that they are currently on bond under Blair's supervision.

Finally, and again taking Plaintiffs' allegations as true (though they are not), the addition of allegations regarding unnamed persons also does nothing to establish continuity. *See* Doc. 188, ¶ 134. *See GICC Capital Corp. v. Technology Finance Group*, 67 F.3d 463 (2d Cir. 1995) (finding no pattern where plaintiff alleged that the defendants' activities affected "multiple victims" but failed to identify any other victims and only stated the nature of the injuries to unnamed victims in general terms).

Far from establishing a pattern of wrongful conduct, plaintiffs' own allegations in fact establish that the arrests of Mr. Egana (the only individual arrested) were reasonable and proper under Louisiana law. *See* La. R.S. 22:1585 (Before a breach of an undertaking occurs, a surety or bail bond producer may surrender a defendant . . .); La. Code Crim. Proc. art. 345(A) (2016) (A surety may surrender the defendant or the defendant may surrender himself . . . at any time prior to forfeiture or within the time allowed by law for setting aside a judgment of forfeiture of the bail bond for the purpose of surrendering the defendant, the surety may arrest him.); La. Code Crim. Proc. art. 311 (2017) ("A surety may surrender the defendant at any time. For the purpose of surrendering the defendant, the surety may arrest him. . . .").

Mr. Egana's arrests and the handcuffing of Mr. Variste were perfectly legal and reasonable actions, prompted by these men's failure to appear in court. Plaintiffs admit that Mr. Egana was arrested on September 27, 2016, after he failed to appear in court in St. Bernard Parish and the court had issued a bond forfeiture order and attachment (Doc. 188, ¶¶ 77, 102). When Mr. Egana was arrested on December 26, 2016, he had still failed to appear in St. Bernard court, and there was still an attachment for his arrest (Doc. 188, ¶ 102). And when Mr. Egana

was arrested on March 31, 2017, there was still an attachment for his arrest for his failure to appear in St. Bernard Parish. *See* Doc. 188, ¶ 102 ("From September 21, 2016 to until May 2, 2017, Mr. Egana had an outstanding bench warrant for failing to appear for a hearing in St. Bernard Parish"). Finally, on May 23, 2017, the arresting recovery agents took him directly to St. Bernard Parish jail. *See* Doc. 188, ¶ 99.

Likewise, the handcuffing of Mr. Variste was a result of his failure to appear in court in Orleans Parish twice and Blair's Bail Bonds' efforts to assist the judicial process. After Mr. Variste failed to appear in court on the first instance, the court notified Blair's Bail Bonds, whose staff then looked for Mr. Variste and told his father to tell him to obtain a new court date. When Mr. Variste failed to appear on the new court date, the court again notified Blair's Bail Bonds. Mr. Variste came to Blair's Bail Bonds' office a week and a half later and was properly placed in handcuffs because Blair's had been notified that he had failed to appear in court on two occasions. These handcuffs were removed when Mr. Variste agreed to wear an ankle monitor until he appeared on a new court date, and when Mr. Variste subsequently appeared in court, the ankle monitor was immediately removed.

It should be noted that bail bondsmen are legally permitted to call clients and indemnitors in connection with lawful debts owed on bail bonds, demand payment, and accurately explain the possible consequences of non-payment.

### 2.  **Plaintiffs have failed to establish a conspiracy.**

To prove that the defendants committed a federal RICO conspiracy in violation of 18 U.S.C. § 1962(d) or a Louisiana state racketeering conspiracy in violation of La. R.S. § 15:351 *et seq.*, the plaintiffs must prove that the defendants agreed to commit a RICO violation.

The Fifth Circuit Pattern Jury Instructions explain that a conspiracy requires proof of three elements: 1) the defendant and at least one other person made an agreement to commit the

violation, 2) the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is with the intent to further the unlawful purpose, and 3) one of the conspirators during the existence of the conspiracy knowingly committed at least one overt act in order to accomplish some object or purpose of the conspiracy. There are no allegations in the Complaints or RICO Case Statements that any of the defendants made such an agreement. The conclusory allegations that Blair's Defendants "conspired" with any person are insufficient to withstand dismissal (Doc. 128, ¶¶ 141, 156, 167, 183). *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995).

Accordingly, because plaintiffs fail to sufficiently allege plausible facts that would support a RICO enterprise, pattern, or conspiracy, plaintiffs' federal RICO claims and Louisiana Racketeering claims should be dismissed.

## II. **Plaintiffs should not be allowed to amend their Complaint yet again in a future attempt to defeat defendants' motion.**

Plaintiffs have amended their Complaint four times, and have filed three RICO Case Statements. Yet, they still have not come close to defeating defendants' Motion to Dismiss. Plaintiffs should not be allowed to amend their Complaints again in the future.

## III. **Conclusion**

Plaintiffs' allegations in the Third Amended Complaint are wholly insufficient to maintain their federal RICO statute or the Louisiana Racketeering Act claims. Plaintiffs have failed to establish a pattern of racketeering activity or a conspiracy, and this failure is fatal to their claims. For these reasons, this Court, should dismiss all of plaintiffs' claims under the federal RICO statute (Second Claim for Relief, Third Claim for Relief) and the Louisiana Racketeering Act (Fourth Claim for Relief) in this matter.

3297752-1

Respectfully submitted,

CHAFFE McCALL, L.L.P.


By: */s/ Walter F. Becker, Jr.*
　　WALTER F. BECKER, JR. #01685
　　CHARLES P. BLANCHARD #18798
　　NICOLE C. KATZ #35857
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-2300
Telephone: 504-585-7000
*Attorneys for Blair's Bail Bonds, Inc.*
*and New Orleans Bail Bonds, LLC*