UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RONALD EGANA, SAMANTHA EGANA, and TIFFANY BROWN, on behalf of themselves and those similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 2:17-cv-5899 |
| BLAIR'S BAIL BONDS, INC., NEW ORLEANS BAIL BONDS, L.L.C., BANKERS INSURANCE COMPANY, INC., BANKERS SURETY SERVICES, INC., BANKERS UNDERWRITERS, INC., A2i, L.L.C., ALTERNATIVE TO INCARCERATION, INC., and ALTERNATIVE TO INCARCERATION NOLA, INC., | ) ) ) ) ) ) ) ) ) ) | HON. JANE TRICHE MILAZZO SECTION "H" HON. DANA M. DOUGLAS (3) |
| Defendants. | ) ) ) / | |

**BANKERS INSURANCE COMPANY, INC. AND
BANKERS SURETY SERVICES, INC.'S MEMORANDUM
OF LAW IN SUPPORT OF AMENDED MOTION FOR SANCTIONS
PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY[1]**

## I.   INTRODUCTION

In every civil lawsuit, members of the bar have a professional responsibility to ensure that their allegations are factually supported and legally permissible <u>before</u> filing a complaint. As explained by the Fifth Circuit Court of Appeals, that responsibility is even greater in the context of civil RICO claims:

> Given the resulting proliferation of civil RICO claims and the potential for frivolous suits in search of treble damages, greater responsibility will be placed on the bar to inquire into the factual and legal bases of potential claims or defenses prior to bringing such suit or risk sanctions for failing to do so.

---

[1] The amendment is to include as additional grounds for sanctions, Plaintiffs' reassertion of admittedly false and unsupported allegations in their Third Amended Complaint and Third Amended RICO Statement.

*Chapman & Cole v. Itel Container Intern. B.V.*, 865 F.2d 676, 685 (5th Cir. 1989) (internal quotations omitted). In direct violation of this heightened professional responsibility, the Plaintiffs led by the Southern Poverty Law Center (an organization that recently paid three million dollars to an individual after failing to properly investigate the facts before making defamatory allegations), not only filed civil RICO claims without a factual or legal basis to do so, but they continue to falsely claim that Bankers is engaged in a RICO enterprise despite admitting that the evidence does not support such a claim.[2]

Accordingly, because the Plaintiffs continue to assert these admittedly false allegations against Bankers—thereby keeping Bankers as the centerpiece of its pursuit for social justice and attempting to try its claims in the court of social opinion—this Court should sanction the Plaintiffs and their counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent authority.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Prior to filing this lawsuit, as part of an ideological crusade against the bail bond industry, the Plaintiffs secretly tape recorded two Blair's employees in an attempt to establish that Bankers was a participant in the "John Grisham-like" fiction that has been splashed throughout this Court's docket over the past 18 months. These innocuous, surreptitiously obtained recordings do <u>not</u> even mention Bankers—much less identify it as part of a vast conspiracy to direct the arrest, kidnapping, imprisonment, or extortion of Mr. Egana or any other customer of Blair's. Nor do the recordings show that Bankers was extending credit, involved with the extension of credit, or the collection of

---

[2] Indeed, in an effort to keep Bankers as the centerpiece of its pursuit for social justice, the Southern Poverty Law Center still to this day has a special page on its website dedicated to this lawsuit, which describes Bankers as a participant in a RICO conspiracy and contains a link to the both the Original Compliant containing all the now-dismissed and drop claims against Bankers, as well as to their most recently filed Third Amended Compliant. (*See* **Exhibit A**).

any debt. Rather, the recordings merely contain a vague, passing reference to an unidentified "insurance company."

Based solely on those innocuous recordings and a few bond forms that reference Bankers, the Southern Poverty Law Center elected to bring civil RICO claims against Bankers for allegedly conspiring with Blair's and A2i to engage in an illegal enterprise in which Bankers purportedly served as a creditor for the issuance of bail bonds (the "**Sanctionable Claims**").[3] The Plaintiffs' allegations were salacious and unworthy of belief.

Believing that the lawyers for the Plaintiffs were just overzealous, Bankers sought to provide as much discovery as possible to make clear to the Plaintiffs that they never should have sued Bankers. On November 13, 2017, Bankers supplied the Plaintiffs with written answers to interrogatories establishing that: (a) Bankers does not participate in the collection of unpaid balances due on bail bond contracts between bail bond producers, such as Blair's, and their clients (Interrogatory Response No. 5); (b) Bankers did not participate in any decision to require Mr. Egana or any other referenced individuals to wear an ankle monitor, as none of these bonds were in excess of Blair's $250,000 underwriting limit (Interrogatory Response No. 6); and (c) Bankers is not provided any payment information regarding Blair's clients, and does not collect or record such information (Interrogatory Response No. 7). Despite receiving this information, which further demonstrated the baseless nature of the alleged illegal enterprise, Plaintiffs continued with to pursue their Sanctionable Claims.

---

[3] The Sanctionable Claims asserted against Bankers in Second Amended Complaint include the following causes of action: (i) a RICO Claim based on Collection of Unlawful Debt (Second Claim for Relief); (ii) a RICO Claim based on Kidnapping, Extortion and Extortionate Collection of Extension of Credit (Third Claim for Relief); (iii) violation of the Louisiana Racketeering Act (Fourth Claim for Relief); (iv) False Imprisonment (Fifth Claim for Relief); and (v) Conversion (Sixth Claim for Relief). The Plaintiffs have dismissed these claims without prejudice and the sole claims that remains against Bankers in Plaintiffs' Third Amended Complaint is for a violation of Louisiana State Contract Law (Seventh Claim for Relief).

Next, at the hearing on Defendants' respective motions to dismiss, Bankers told the Court and the litany of lawyers for the Plaintiffs that the allegations against Bankers were not plausible—after all, *why would an entity located in St. Petersburg, Florida that is paid up front its portion of bond premiums and is not involved in the extension of credit or the collection of debt, help to direct the payment collection activities of two separate, independent, and unrelated New Orleans businesses?* In response, the Plaintiffs' lawyers doubled down on their RICO story by representing the following to this Court to save the complaint from dismissal:

> Bankers tries to avoid the import of these allegations by arguing that the Court should determine that Mr. Compass [a Blair's employee secretly recorded] was making up this relationship and it was just a tactic he was using as a bounty hunter to get money from the client; but in order to do that, the Court must find that Mr. Compass lied without having him being deposed, without him testifying at trial and without the Court or the jury ever having the opportunity to assess Mr. Compass's credibility. That's just not the standard the Court should apply on a motion to dismiss, even under *Iqbal* and *Twombly*.

More than a year after the above-quoted argument was made, the Southern Poverty Law Center finally set Mr. Compass for deposition.

Seeing that Plaintiffs and their counsel were steadfast in their continued effort to pursue this frivolous litigation against Bankers, the undersigned, on December 21, 2017, provided the Plaintiffs with the underlying agreement between Bankers and Blair's—the Supervising Producer Agreement (the "**Producer Agreement**"). The plain and unambiguous language of the Producer Agreement shows that Bankers does not participate in extending credit to bail bond defendants, nor does Bankers participate in collecting installment payments or in collecting subsequent payments of any other kind from bail bond defendants. Instead, Bankers is paid up front and in full for its portion of the premium, and any extension of credit is Blair's undertaking and is at Blair's sole risk. Paragraph 5.2 of the Producer Agreement provides in relevant part as follows:

> **The premiums charged the bonded party or their indemnitors for all bail bond undertakings are <u>due and payable at the time of the issuance of such undertakings</u>. Any extension of credit by Supervising Producer [Blair's], or any of its authorized sub producers, employees, or cooperating producers, brokers, or other entities shall be at Supervising Producer's [Blair's] sole risk and expense.**

(**Exhibit B**, p. 5) (emphasis added). The Producer Agreement likewise unequivocally indicates that Bankers does not participate in any way in fugitive recovery activities, and certainly not the alleged actions that underlie Plaintiffs' claims for extortion, kidnapping, or conversion. Paragraph 7.7 states in relevant part:

> Supervising Producer is and shall at all times material hereto continue to be an independent contractor and is not and shall not be an employee of either Surety or BSSI [Bankers Insurance Company and Bankers Surety Services, Inc., respectively]. . . . **All fugitive recovery activities shall be at the sole discretion of the Supervising Producer and it is expressly agreed that Supervising Producer acknowledges that Surety and BSSI have no involvement with these activities** . . . .

(Ex. B, p. 8) (emphasis added). Thus, the Producer Agreement confirms that Bankers' is not involved in the extension of credit or collection of payments by Blair's and has absolutely no reason to have such involvement. Although no valid basis for the Sanctionable Claims ever existed, the Plaintiffs should—at the very least—have dropped their Sanctionable Claims against Bankers immediately upon review of the Producer Agreement. They did not.

On June 1, 2018, this Court dismissed the Plaintiffs' First Amended Complaint (the "**Dismissal Order**"). [ECF No. 122]. In the Dismissal Order, the Court found that Plaintiffs: (a) failed to allege sufficient facts to show that Bankers controlled the "physical details" of the actions of Blair's and Blair's agents; and (b) failed to sufficiently allege that Bankers was involved in the alleged extension of credit in any manner. [ECF No. 122, pp. 15–16, 18]. Finally, in dismissing the state law false imprisonment and conversion claims against Bankers, the Court found that: "**Plaintiffs have not alleged any facts suggesting that the Bankers Defendants exerted**

physical control over the Blair's Defendants. **Indeed, there is not even an allegation that the Bankers Defendants instructed the Blair's Defendants to detain or overcharge Mr. Egana**." [ECF No. 122, pp. 15–16] (emphasis added). The Plaintiffs remained undeterred.

Despite the Court's admonitions, Plaintiffs unreasonably and vexatiously multiplied these proceedings by filing their Second Amended Complaint, by which they attempted to assert and maintain **the exact same claims based on the exact same purported evidence and on equally insufficient factual allegations.** More troubling was that, in an effort to avoid the consequences of the plain and unambiguous language of the Producer Agreement (which directly refuted any "evidence" that Plaintiffs had secretly obtained through their wiretapping activities), counsel for Plaintiffs omitted that document (or references to the key provisions therein) from the Second Amended Complaint.[4]

On July 5, 2018, Bankers sent Plaintiffs a letter giving them another opportunity to dismiss the Sanctionable Claims before it was necessary for Bankers to file a response to the Second Amended Complaint, and before the parties kicked-off further depositions in New Orleans. (*See* correspondence attached hereto as **Exhibit C**). Yet again, however, Plaintiffs' counsel elected to perpetuate this dispute in correspondence dated July 26, 2018 (*see* Plaintiffs' "**Rule 11 Response Letter**," attached hereto as **Exhibit D**). According to the Plaintiffs' counsel, the unverified hearsay statements, that Plaintiffs surreptitiously recorded, were enough for Plaintiffs to maintain their claims against Bankers:

> Specifically, Plaintiffs have described and produced three recorded conversations with employees of Blair's who told Plaintiffs that the "insurance company" would be reviewing information like payment arrangements, payments made, missed court dates, and cleared warrants, and making decisions including whether Mr. Egana's ankle monitor could be taken off, whether he would be arrested, and

---

[4] Plaintiffs have stated that they did not attach the Producer Agreement to their Second Amended Complaint because Bankers designated it as "Confidential" under the Stipulated Protective Order. They have not explained, and cannot explain, however, why they did not seek to file it under seal, as contemplated by the Stipulated Protective Order.

whether he would be surrendered to jail. SAC ¶¶ 93-97, 100. The only "insurance company" that appeared on Plaintiffs' bond documents is Bankers. Thus, Plaintiffs "have evidentiary support" as required by Rule 11, and their allegations are not "lacking in support" as is required for Rule 11 sanctions. (Ex. D).

The crucial problem with Plaintiffs' position is that these recorded conversations were never admissible against Bankers under the black letter evidence law discussed below, as no declarant from Bankers is ever identified in these recorded conversations. Given the vague nature of the recorded conversations as to the "insurance company," Plaintiffs had no business bringing the Sanctionable Claims against Bankers in the first instance without first obtaining evidence actually substantiating that Bankers had in fact made such statements or conveyed such instructions to Blair's. Plaintiffs not only never had such evidence but continued anyway in the face of contrary evidence.

On July 30, 2018, Blair's served Answers to Bankers' Requests to Admit, which unequivocally confirmed that Bankers was not involved in <u>any</u> of the acts alleged by Plaintiffs as the grounds for their Sanctionable Claims. (Blair's Answers are attached hereto as **Exhibit E**). As Plaintiffs themselves now admit in their untimely Motion for Leave to Amend to drop claims against bankers [ECF No. 168] (the "**Motion to Amend**"), by its answers to Bankers' Requests to Admit, Blair's confirmed "that Bankers had no involvement in decisions to require defendants to wear ankle monitors, to establish installment plans for the payment of bond premiums, and to surrender defendants to jail when they failed to make payments." [Motion to Amend at p. 4]. Any excuse the Plaintiffs supposedly had in continuing to pursue the Sanctionable Claims against Bankers evaporated when Plaintiffs received these admissions from Blair's **before** Plaintiffs filed their Opposition to Bankers' Motion to Dismiss Plaintiffs' Second Amended Complaint [ECF No. 143] (the "**MTD Opposition**") on July 31, 2018.

On October 17, 2018, Plaintiffs deposed Ms. Dawn Baptiste, an employee of Blair's. She was one of the victims of the surreptitious tape recordings of the Southern Poverty Law Center. Ms. Baptiste testified that she feared Mr. Egana and his family because of the threats and insinuations they made during their interactions. Ms. Baptiste admitted to the conversations recorded by the Southern Poverty Law Center, but she readily conceded that Bankers never told or directed her to do anything with regard to the extension of credit or debt collection activities. As Ms. Baptiste put it, Bankers had no involvement in the activities alleged to implicate Bankers in the Second Amended Complaint—a fact that Bankers has been trying to tell the Southern Poverty Law Center for over a year—but she made the statements to avoid the perceived physical threats from Mr. Egana.

After Ms. Baptiste's deposition, Plaintiffs finally conceded that they had no evidence to support their Sanctionable Claims against Bankers and, therefore, filed their Motion to Amend by which they sought to drop, without prejudice, their Sanctionable Claims against Bankers (the "Motion for Leave"). [ECF No. 168.  ")]. Therein, Plaintiffs admitted that "**the discovery taken to date**—particularly Ms. Baptiste's deposition testimony . . .—**has contradicted the factual allegations on which those Claims [against Bankers] are based**." [*Id.* at p. 12]. Plaintiffs further explain in their Motion to Amend that

> With both Blair's admissions, and Ms. Baptiste's testimony in mind, Plaintiffs acknowledge that Bankers' and Blair's position is as follows:  although Bankers had no role in requiring ankle monitors or setting and collecting payments, Blair's employees nevertheless told clients otherwise in order to compel payments from them.  Thus, **Plaintiffs have concluded that, on balance, future discovery is unlikely to produce additional evidence that would support Plaintiffs' Claims against Bankers**.

> [ECF No. 168-1 at p. 5 (emphasis supplied)].

8

Bankers opposed Plaintiffs' Motion to Amend.   [ECF No. 176].  Bankers argued that Plaintiffs should not be permitted to drop their claims against Bankers *without prejudice* so they could loom over the proceedings waiting to someday possibly spring back to life.  [*See id*]. Accordingly, Bankers requested that the Court deny Plaintiffs' Motion for Leave and proceed to consider Bankers' then-pending Motion for Dismiss Plaintiffs' Second Amended Complaint and dismiss Plaintiffs' Sanctionable Claims against Bankers, *with prejudice.  Id.* at pp.12-15.

At the December 5, 2018, hearing on their Motion for Leave, Plaintiffs' counsel stood before Magistrate Knowles and, in pleading for leave to amend, reiterated in open court: "we are willing to withdraw these claims now because the evidence that we've been able to take in discovery so far has indicated that *the factual underpinnings of the claims have failed.*" (Transcript of the December 5, 2018, hearing, a copy of which is here attached as **Exhibit F** at 6:3–8). When asked by Magistrate Knowles, "why dismiss them now?" Plaintiffs' counsel explained that they expect the remaining two witnesses from Blair's who made statements about the "insurance company" to testify as Ms. Baptiste already has, "**that they were lying when the told their clients that Bankers was the one making the important decision**." (*Id.* at 6: 14-23).

On December 10, 2018, the Court entered its Order granting Plaintiffs' Motion to Amend. [ECF No. 186]. Therein, the Court stated:

> **Plaintiffs now admit** that there have been developments through discovery that have led them to conclude that at this time, **there is no support for these claims**[, the Second, Third, Fourth, Fifth and Sixth claims for relief against Bankers]. This **discovery has led them to believe that Bankers was not involved in the collections process. Indeed, they note that Blair's has now responded to Bankers' requests for admissions in which it admits that Bankers was not involved in the collections process. <u>Plaintiffs now believe that Blair's only led them to believe that it was Bankers directing that process.</u>**

[*Id.* at pp. 1-2].

Ultimately, the Court permitted Plaintiffs to amend their Complaint to drop claims against Bankers without prejudice, believing that allowing those claims to be dropped would amount to "**the narrowing of issues before the District Court**." *Id.* at pp. 5-6 (emphasis supplied)]. The Court also expressly "forewarn[ed] plaintiffs that it will not look kindly on a future motion to amend to reassert these claims against Bankers unless plaintiffs are armed with strong evidence that demonstrates good cause under Rule 16." [*Id.* at p. 7].

Armed with no more evidence than they had one week earlier, and after receiving even more contrary evidence, on December 12, 2018, Plaintiffs filed their Third Amended Complaint [ECF No. 188] and Third Amended RICO Statement [ECF No. 189] containing the same salacious, scandalous and conclusory allegations as to Bankers that Plaintiffs admitted they had no evidence to support and that have been directly controverted by the evidence that has been discovered.[5] Indeed, in their now-operative pleading, **Plaintiffs continue to allege that Bankers is a member of and participates in a RICO enterprise, tha**t **Bankers has engaged in "wrongdoing" in violation of RICO, and Bankers commits and benefits from racketeering activity.** [ECF No. 188 at ¶¶ 137-146; ECF No. 189 at pp. 4, 5, 6, 17, 19, 20, 22].

The purported "facts" on which Plaintiffs ostensibly rely to make these conclusory allegations—to the extent they rely on any specifically alleged facts at all—are the exact same unverified hearsay statements about the "insurance company" that Plaintiffs previously alleged but now have admitted are not true. [*See* ECF No. 188 at ¶¶ 88, 93, 95, 96, 100, 113]. While Blair's employees may well have made these statements to Plaintiffs, and, therefore, the allegations of

---

[5] On December 6, 2018, after the hearing on Plaintiffs' Motion for Leave, but before Plaintiffs filed their Third Amended Complaint and Third Amended RICO Statement, A2i served on all parties its Responses to Bankers' First Request for Admissions. (A copy of which is here attached as **Exhibit G).** These admissions from A2i confirm that Bankers does not engage, with respect to A2i, in the conduct that Plaintiffs allege constitutes predicate acts and racketeering activity.

*what Blair's said* may be accurate, **Plaintiffs' allegations go beyond Blair's conduct and expressly and purposefully implicate Bankers by alleging "[u]pon information and belief the insurance company [the Blair's employees] referenced was Bankers**." [*Id.* at 88, 93, 96, 100, 113]. Thus, by these allegations, Plaintiffs again allege that Bankers was the one pulling all the switches and *directing* Blair's alleged extortion and kidnapping and profiting from Blair's actions, despite only a week before filing them admitting to the Court that they know these allegations cannot be supported, and that it is "now appropriate to withdraw them."

This Court should now put an end to Plaintiffs' ideological crusade against Bankers and sanction Plaintiffs' counsel for bringing and unreasonably and vexatiously multiplying these proceedings as to Bankers.

## III.   ARGUMENT

### A.  The Court has the power to sanction Plaintiffs and their counsel pursuant to 28 U.S.C. § 1927 or this Court's inherent authority.

When attorneys engage in conduct that "unreasonably and vexatiously" multiplies the proceedings in any case, sanctions may be awarded pursuant to 28 U.S.C. § 1927. "Unreasonable and vexatious conduct 'is harassing or annoying, or evinces the intentional or reckless pursuit of a claim, defense or position that is or should be known by the lawyer to be unwarranted in fact or law.'" *In re Osborne*, 375 B.R. 216, 224–25 (Bankr. M.D. La. 2007) (quoting *Cruz v. Savage*, 896 F.2d 626, 631–2 (1st Cir. 1990)). Choosing to pursue a claim without evidence, or in the face of evidence that there is no such claim, constitutes unreasonable and vexatious conduct that multiplies proceedings sufficient to award sanctions under Section 1927. *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 549 (5th Cir. 2001); *see also Ratliff v. Stewart*, 508 F. 3d 225, 235 (5th Cir. 2007) (confirming that Section 1927 permits courts to award as sanctions a party's "entire

financial burden" when "the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in") (internal quotations omitted).

Moreover, "Federal courts [also] have an inherent power to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets." *Terra Partners v. Rabo Agrifinance, Inc.*, 504 Fed. Appx. 288, 290 (5th Cir. 2012) (internal quotations omitted). This inherent authority includes the ability to award fees and costs, and to dismiss an action with prejudice, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991), as well as the ability to enjoin a party from filing future meritless litigation. *Terra Partners*, 504 Fed. Appx. at 290–291. "[I]f the sanctionable conduct implicates the filing of the case from its inception, then the entire expense incurred in defending may be awarded as a sanction." *Thabico Co. v. Kiewit Offshore Srvcs., Ltd.*, No. 2:16-CV-427, 2017 WL 4270743 *2 (S.D. Tex. Sept. 26, 2017) (citing *Goodyear Tire & Rubber Co.*, 137 S. Ct. 1178, 1187 (2017)).

Here, Plaintiffs Plaintiffs' Sanctionable Claims were <u>never</u> based on any cognizable evidence, and became contradicted by the evidence Plaintiffs discovered early and often in this lawsuit. The Court should invoke its authority provided by Section 1927 and its inherent authority to sanction Plaintiffs by awarding Bankers the entire amount of attorneys' fees and costs it has incurred in defending against the Sanctionable Claims, and enjoining Plaintiffs' counsel from bringing those claims or asserting their meritless and misleading allegations again.[6]

### B. Plaintiffs' counsel is subject to a higher standard because they have asserted RICO Claims.

Section 1927 sanctions are especially warranted here where a party asserts and then continues to pursue federal RICO claims without factual or evidentiary support. "[P]arties and

---

[6] On December 26, 2018, Bankers filed a Motion to Strike requesting that the Court strike from Plaintiff's Third Amended Complaint and Third Amended RICO Statement Plaintiffs' allegations regarding Bankers' alleged participation in a RICO enterprise. [ECF No. 197].

their counsel must be especially diligent before filing RICO complaints, in order to avoid sanctions. [...] This continued warning regarding baseless claims should not be taken lightly." *Moore v. Astra Pharm., Inc.*, Civ. A. No. 91-2206, 1992 WL 245678, at *3 (E.D. La. Sept. 15, 1992) (quoting *Smith v. Our Lady of the Lake Hospital*, 960 F.2d 439, 444 (5th Cir. 1992) (emphasis added)). The Fifth Circuit has made clear:

> Given the resulting proliferation of civil RICO claims and the potential for frivolous suits in search of treble damages, **greater responsibility will be placed on the bar to inquire into the factual and legal bases of potential claims** or defenses prior to bringing such suit **or risk sanctions for failing to do so.**"

*Chapman*, 865 F.2d at 685. Citing the Fifth Circuit's warning *Chapman*, the district court in *ITI Internet Services, Inc. v. Solana Capital Partners, Inc.* found that Section 1927 sanctions were appropriate where the "[p]laintiffs retained their … RICO claims in their Amended Complaint **despite the fact that Defendants' first motion to dismiss highlighted the legal deficiencies of the claims**." C055-2010Z, 2007 WL 666593, at *7 (W.D. Wash. Feb. 27, 2007) (emphasis added).

Here, Plaintiffs' decision to file and then maintain their RICO claims over a period of 16 months, and for several months after Bankers and the Court advised Plaintiffs of the significant legal and factual deficiencies of their RICO claims, has unreasonably and vexatiously multiplied these proceedings, particularly since Plaintiffs have had knowledge of and were in possession of facts that rendered the Sanctionable Claims baseless. *See In re Taxable Mun. Bond Sec. Litig.*, MDL 863, 1994 WL 34924, at *8 (E.D. La. Feb. 3, 1994), *aff'd*, 51 F.3d 518 (5th Cir. 1995) (holding that plaintiffs' RICO claims were sanctionable under Section 1927 because plaintiffs were in possession of knowledge disputing those claims and yet "continue[d] prosecuting the meritless RICO claims after that date").

    **C. Plaintiffs Impermissibly Filed their Sanctionable Claims, and Then Multiplied These Proceedings by Maintaining Them, Based on Nothing but Recordings Containing Obviously Inadmissible Hearsay.**

The recorded "unverified hearsay" conversations of purported Blair's employees to which Plaintiffs repeatedly have pointed as the basis for bringing and continuing to maintain their Sanctionable Claims is simply **"not a sufficient basis upon which to 'subject one to the burdens of complex litigation and heavy legal costs.'"** *Chapman*, 865 F.2d at 685 (internal citations omitted) (emphasis added) (affirming trial court's dismissal with prejudice of claims and imposition of Rule 11 sanctions where RICO claims were based on "unverified hearsay"); *Kendrick v. Zanidas,* 609 F. Supp. 1162, 1172 (N.D. Cal. 1985) (discussed *infra*).[7] Similar to the situation here, in *Chapman* the court concluded that, "the only possible 'solid' evidence at the time of the initial filing was the taped conversation between Montgomery and Hassell and the five cancelled checks." *Id*. at 684. The Fifth Circuit concluded that the district court "correctly concluded that neither amounted to proper grounds for bringing a RICO cause of action." *Id.*

Similarly, in *Kendrick v. Zanidas*, the court awarded sanctions under Section 1927 where the plaintiff relied on inadmissible hearsay in bringing a claim, without having first conducted a reasonable investigation, and then maintaining the claims in the face of contrary evidence:

> In the light of this record, it is clear that the motions for sanctions must be granted. Not a semblance of a "reasonable inquiry" was made to determine whether the allegations were well-grounded in fact. Neither Kendrick nor his counsel conducted a pre-filing investigation to discover a factual basis for the allegations … . In

---

[7] None of the recorded "conversations" between Blair's Ms. Baptiste or Mr. Compass, and Mr. Egana, ever identifies the "insurance company" declarant by name. Thus, the recorded conversations could never be admissible against Bankers because the Court cannot determine whether the party admission predicates are satisfied without knowing the identity of the purported declarant. *See, e.g.*, *Barry v. Simmons Airlines*, 239 F.3d 366 (5th Cir. 2000) (excluding double hearsay statement, even when one of the declarants is party opponent; statement that someone from defendant disparaged plaintiff was double hearsay). Indeed, as the court noted in *Vasquez v. Lopez-Rosario*, "unattributed statements repeated by party opponents cannot be admissible. . . . As the original declarant is unknown, it is impossible to determine whether the original declarant also fits within the party-opponent definition . . . ." 134 F.3d 28 (1st Cir. 1998). Nor does the "co-conspirator" exception to the hearsay rule avoid the need to identify the supposed Bankers' declarant. *E.g.*, *U.S. v. Mouzin*, 785 F.2d 682, 692–93 (9th Cir. 1986) ("The government's failure to identify the author or authors of the ledger entries rendered the ledger inadmissible under Rule 801(d)(2)(E) for a lack of proper foundation. Knowledge of the identity of the declarant is essential to a determination that the declarant is a conspirator whose statements are integral to the activities of the alleged conspiracy."); *Superior Offshore Intern., Inc. v. Bristow Group, Inc*., No. 1:09-cv-00438, 2011 WL 2516522, at *9 (D. Del. June 23, 2011) ("Moreover, given Tuttle's inability to identify the person with whom Graves spoke, and Tuttle's mistaken surmise about who authorized Graves to speak on behalf of Air Logistics, none of Defendants is implicated as a member of the purported conspiracy.")

addition**, the maintenance of this action in the face of the facts known or available to Kendrick both before and after the filing of defendants' motions multiplied the proceedings unreasonably and vexatiously, entitling defendants to recover the resulting costs, expenses and attorneys' fees under 28 U.S.C. § 1927.**

609 F. Supp. 1162, 1172 (N.D. Cal. 1985) (emphasis added).

Here, Plaintiffs should *first* have pursued discovery from Blair's and A2i BEFORE ever bringing the Sanctionable Claims against Bankers. Plaintiffs' counsel should have known that the recorded conversations were an insufficient basis to bring the Sanctionable Claims against Bankers. *See, e.g. Walker v. City of Bogalusa*, CIV.A. 96-3470, 1997 WL 736695, at *7 (E.D. La. Nov. 25, 1997), *aff'd*, 168 F.3d 237 (5th Cir. 1999) (holding that sanctions under Section 1927 were appropriate where counsel for the plaintiff "had access to information" that directly contradicted the merits of the complaint, because "zeal that blinds an attorney to the realities of his case and interferes with his duties as an officer of the court is sanctionable."); *see also Mercury Air Group, Inc.*, 237 F.3d at 549 (holding that a party's confession that it merely "**hoped to discover information that would reveal a basis for a lawsuit**" is deserving of sanctions where that party was put on notice multiple times that the claims lacked evidentiary support and merit) (emphasis added).[8]

*Indeed, the vague references in the recorded conversations to an "insurance company," with no reference whatsoever to any actual declarant at Bankers, should have been a red flag to Plaintiffs' counsel that they (still) lacked a sufficient factual basis to file the Sanctionable Claims.* And if the red flag was not noticed at that time, Plaintiffs should have refrained from filing the Opposition to Bankers' Motion to Dismiss Plaintiffs' Second Amended Complaint, and

---

[8] In Plaintiffs' Rule 11 Response Letter, counsel for Plaintiffs admit that "[w]e expected discovery to lead to indisputably admissible evidence." Ex. D at 4. Plaintiffs' mere "expectation" was an insufficient basis for bringing the Sanctionable Claims under the above referenced case law.

withdrawn the Sanctionable Claims, when Plaintiffs received Blair's admissions on July 30, 2018, that Bankers had not actually directed Blair's to do anything in conjunction with Mr. Egana or any of the other named individuals in the Second Amended Complaint. Instead, Plaintiffs impermissibly waited another four months, and until the 21st day after Bankers' transmittal of its Rule 11 Motion, to attempt to withdrawn the Sanctionable Claims, *without prejudice*. *See Wise v. Washington Cnty.*, CIV.A. 10-1677, 2015 WL 1757730, at *21 (W.D. Pa. Apr. 17, 2015) ("By March 1, 2004 however, the underlying suit had been placed in a posture which we believe implicates the sanctions allowed by § 1927. At that point, Jennings clearly knew that his client's case lacked merit. Metaphorically, rather than pulling off of the road or applying the brakes, Jennings allowed his client's vehicle to tumble down a hill towards certain disaster. Sanctions under § 1927 are appropriate to '[D]eter an attorney under (sic) from intentionally and unnecessarily delaying judicial proceedings . . .'") (internal citations omitted).

The case law cited above prohibiting even the *bringing of* claims based on unverified hearsay is not hiding. Based on it, Plaintiffs' counsel should have known that the Sanctionable Claims were "unwarranted in fact or law" when originally filed. Plaintiffs' pursuant of those claims anyway is "unreasonable and vexatious" conduct warranting sanctions under Section 1927, *see In re Osborne*, 375 B.R. at 224–25 ("sanctions under § 1927 are appropriate when 'an attorney ***reasonably should have known*** that a claim pursued is frivolous.') (quoting *Cruz*, 896 F.2d at 631–2), and the Court's inherent authority, *Chambers*, 501 U.S. at 46 ("the inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices").

### D. Plaintiffs Multiplied These Proceedings By Maintaining Their Claims After Receipt of the Producer Agreement in December, 2017.

By the time Plaintiffs filed the Second Amended Complaint on June 21, 2018, Plaintiffs' counsel had in their possession for exactly six months the Producer Agreement, which, as detailed

above, is repugnant to Plaintiffs' Sanctionable Claims. The specific provisions of the Producer Agreement (Paragraphs 5.2 and 7.7) confirm that Blair's is not an agent of Bankers as to the "physical details" of the acts complained of by Plaintiffs—collection of a financed bond fee through alleged kidnapping, extortion, or conversion—and confirms that any extension and collection of credit for a bond premium is within Blair's sole purview.

Courts have not hesitated to impose Section 1927 sanctions in similar circumstances where parties such as Plaintiffs ignore the plain, unambiguous, and *specific* language of contract documents that directly address the relevant issues. *See, e.g.*, *Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x 222 (4th Cir.2008) (holding that Section 1927 sanctions were warranted after the plaintiff's counsel refused to dismiss a claim that directly contradicted the controlling agreement between the parties). Here, Plaintiffs' counsel received, and then ignored, the plain and unambiguous provisions in the Producer Agreement that refuted the Plaintiffs' claims. *See Mercury Air Group, Inc.* 237 F. 3d at 549 (awarding sanctions under Section 1927 where plaintiffs chose to pursue claims without evidence and in the face of evidence that they did not have such claims).

### E.  The Sanctionable Claims are Otherwise Without Any Legal or Factual Support

Plaintiffs' RICO, unlawful debt collection, extortion, kidnapping, and conversion, theories against Bankers all centered on the idea that Bankers was somehow participating in unlawful fugitive recovery activities to collect a debt. As they admitted in their Rule 11 Response Letter and Motion to Amend, Plaintiffs had no evidence, or reasonable basis, to support these allegations when they originally brought them or when they reasserted them in their Second Amended Complaint against Bankers. Instead, in every iteration of their Complaint, Plaintiffs directed dozens of their allegations against "Defendants" and "the Bonding Defendants" generally to try to hide that they could not allege bad acts against Bankers individually.  Such allegations are inherently unreasonable and vexatious and subject to sanctions. *See Payne v. Univ. of Southern*

*Miss.*, No. 1:12-CV-41-KS-MTP, 105 WL 1482636 * 5 (S.D. Miss. Mar. 31, 2015), *modified on*

*other grounds*,1:12-CV-41-KS-MTP, 2015 WL 3549862 (S.D. Miss. June 5, 2015), (awarding

defendants sanctions under Section 1927 "as a result of Plaintiff's counsel's shotgun pleading and

argumentation" where the plaintiffs' complaint, among other things, contained "general

allegations against all Defendants without regard to their individual actions").

### 1. *Plaintiffs' RICO claims against Bankers were fundamentally deficient in every iteration of Plaintiffs' Complaint.*

As the Court informed Plaintiffs in its Dismissal Order, a principal is liable for the torts of

its agent only when "the relationship of the parties includes the principal's right to control the

physical details of the actor as to the manner of his performance which is characteristic of the

relations of master and servant." *Pinero v. Jackson Hewitt Tax Svc., Inc.*, 638 F. Supp. 2d 632, 640

(E.D. La. 2009).  Despite these admonitions, even Plaintiffs' fourth iteration of their Complaint,

the Second Amended, did not contain such allegations, and instead continued to summarily lump

Bankers together with other "Defendants" and asserted vague allegations in an attempt to plead

Blair's was Bankers' "agent."  Moreover, the Producer Agreement and discovery all confirm there

is absolutely no participation by Bankers in the allegations of the alleged RICO enterprise of

kidnapping, false imprisonment, extortion, or the collection of an unlawful debt and no agency

relationship with regard to such acts.

### 2. *Bankers has no involvement in the alleged kidnapping, false imprisonment, extortion or conversion.*

In its Dismissal Order the Court warned Plaintiff that there was simply no specific

allegation in the First Amended Complaint that Bankers directed Blair's to detain Mr. Egana or

any particular individual. [ECF No. 122, p. 16]. Plaintiffs ignored the Court's warning in filing the

Second Amended Complaint that likewise lacked any such *specific* allegations.  Indeed, there was

no specific allegation that Bankers "**did anything**" to Plaintiffs, directly or indirectly.  *See*

*O'Rourke v. Crosley*, 847 F. Supp. 1208, 1215 (D. N.J. 1994) (dismissing plaintiffs' RICO claim based on extortion stating, "significant, there is no allegation that [defendant] *did anything* to plaintiff, nor that [defendant] ordered or otherwise induced any acts committed against plaintiff by others") (emphasis in original). This is because, as Plaintiffs have now admitted, the discovery taken to date reveals, and any reasonable inquiry by Plaintiffs' counsel would have confirmed, that the Plaintiffs' allegations of kidnapping, false imprisonment, extortion and conversion against Bankers were unsustainable. Plaintiffs' sheer lack of due diligence, and persistence in maintaining unsupportable claims, caused Bankers to defend a claim that Plaintiffs will never be able to prove.

### 3. *Bankers cannot be liable for collection of an unlawful debt.*

As a separate RICO claim, Plaintiffs alleged in the Complaint, First Amended Complaint, and the Second Amended Complaint that "*Defendants*" engaged in the "Collection of Unlawful Debt." [ECF No. 128, ¶¶ 153-164 "Second Claim for Relief"]. No iteration of Plaintiffs' Complaint, however, ever contained an allegation that the alleged installment or ankle monitoring payments were payable to Bankers, or that Bankers collected such payments. [ECF No. 122, p. 14]. To the contrary, the Producer Agreement relied on by Plaintiffs ***confirmed*** that Bankers expressly assumes no direction or responsibility for any extension of credit that Blair's itself decides to provide. [*See* Ex. A, ¶ 5.2]. And, Blair's has admitted and shown that Bankers plays no part in collection of debts owed to Blair's. The Plaintiffs also falsely stated in their MTD Opposition, without any legal or factual basis but rather, based on only the purported recorded conversations, that "even if the contract formally assigns responsibility for collection to Blair's, Bankers' actual practice was to involve itself in collections." [MTD Opposition, p. 21]. To make matters worse for Plaintiffs' counsel, they made this assertion in their MTD Opposition *after* they had received Blair's admissions confirming that Bankers did not direct or participate in any of the conduct Plaintiffs contend constitute unlawful collection of debt. As such, Plaintiffs' contention is

sanctionable. These deficiencies should have been abundantly clear to Plaintiffs' counsel from the information available to Plaintiffs prior to the filing of the Second Amended Complaint, and certainly prior to the filing of their MTD Opposition once they had Blair's admissions.

**F. Plaintiffs' Request to Voluntarily Dismiss the Sanctionable Claims *Without Prejudice* Does Not Preclude Sanctions, but Rather, Further Demonstrates That Sanctions are Necessary.**

By their Motion to Amend, Plaintiffs untimely sought to drop their Sanctionable Claims, **but without ramifications**, not because there is suddenly no evidence to support those claims (there never has been any), but simply to avoid sanctions under Rule 11 of the Federal Rules of Civil Procedure. However, attempting to voluntarily dismiss without prejudice meritless claims does not shield a party from Section 1927 sanctions or from the Court's inherent authority to impose sanctions. *See Baiul v. NBC Sports, a division of NBCUniversal Media LLC*, 708 Fed. Appx. 710, 715 (2d Cir. 2017), *cert. denied sub nom. Baiul v. NBC Sports*, 138 S. Ct. 1299 (2018) (imposing sanctions under Section 1927 and stating that the plaintiff's "attempts to dismiss the action were insufficient to overcome his vexatious conduct" where he "was aware of the meritless nature of the claims, yet continued to pursue litigation … anyway.").

As Plaintiffs proudly state in their untimely Motion to Amend, they desire the option to be able to continue this action without Bankers as a defendant to the Sanctionable Claims and then potentially refile their Sanctionable Claims against Bankers in this or another action. Given the Plaintiffs' admission that they are not likely to discover evidence of Bankers' liability on the Sanctionable Claims, the threat of further litigation against Bankers is itself bad-faith, vexatious and unreasonable conduct warranting sanctions. *See Terra Partners*, 504 Fed. Appx. at 290.

**G. Plaintiffs Vexatiously Multiplied These Proceedings in Reasserting in their Third Amended Complaint and Third Amended RICO Statement Scandalous Allegations Against Bankers that They Have Admitted Cannot be Supported.**

If there was any doubt as to whether Plaintiffs would ever reassert their claims against Bankers after convincing the Court to allow them to drop them without prejudice, that doubt was entirely erased when Plaintiffs filed their Third Amended Complaint [ECF No. 188] and Third Amended RICO Statement [ECF No. 189] containing the **EXACT SAME** allegations that they admitted were not true. Plaintiffs continue to allege that Bankers is a "wrongdoer" and a participant in a nefarious "RICO Enterprise," [ECF No. 189 at pp. 4, 5, 6, 17, 19, 20, 22], and that "upon information and belief" Bankers is the "insurance company" Blair's employees told Plaintiffs was providing direction and control regarding the collection process and ankle monitoring [ECF NO. 188 at ¶¶ 88, 93, 95-97, 100, 113]. Because Plaintiffs now know, and possess evidence that demonstrates, that Bankers never provided the direction to or control over Blair's that Blair's employees suggested an "insurance company" had, Federal Rule of Civil Procedure 11 prohibits Plaintiffs and their counsel from persisting in alleging otherwise. *Battles v City of Ft. Myers*, 127 F. 3d 1298, 1300 (11th Cir. 1197) ("A 1993 amendment to Rule 11 emphasizes an attorney's continuing obligation to make inquiries, and thus the rule allows sanctions when an attorney continues 'insisting upon a position after it is no longer tenable.'"); *Childs v. State Farm Mut. Auto Ins. Co.*, 29 F. 3d 1018, 1025 (5th Cir. 1994)(confirming that an attorneys' obligation under Rule 11 to assert allegations only after making a "reasonable investigation" includes taking into account evidence and facts developed during the course of the proceeding and stating that an attorney may not "cling tenaciously to the investigation he had done at the outset of the litigation and bury his head in the sand"); *see also Chambers*, 501 U.S. at 46–48) (explaining that "bad faith" conduct may be sanctioned under the court's inherent powers even if it is also sanctionable under other rules, such as Rule 11 or 28 U.S.C. § 1927: "these other mechanisms, taken alone or together, are

not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions").

Plaintiffs and their attorneys cannot avoid their obligations to assert and maintain claims and allegations only if supported by a reasonable investigation simply by using the magic words "***upon information and belief***."  First, the Supreme Court Rules Committee has warned that parties and their attorneys cannot hide behind such language:

> factual contentions in initial pleadings by plaintiffs or defenses when specifically identified as **<u>made on information and belief</u>** does not relieve litigations from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it **is not a license to join parties, make claims, or present defenses without any factual basis**. Moreover, **<u>if evidentiary support is not obtained</u>** after a reasonable opportunity for further investigation or discovery, **the party has a duty under [Rule 11] not to persist with that contention**.

Committee Notes on Amendments to Federal Rules of Civil Procedure, 146 F.R.D. 401, 585 (1993) (emphasis supplied). Moreover, even if the Blair's employees were in their mind referring to Bankers when suggesting their hands were being tied by the "insurance company," Plaintiffs cannot omit ***the critical fact that the Blair's employees were lying*** so as to misleadingly suggest by their allegations that Bankers was directing and controlling Blair's when they know that is not true. *See id.*; *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-CV-06059-EMC, United States District Court for the Northern District of California, Order Granting Defendant's Motion to Dismiss and For Sanctions, March 3, 2018) (finding that sanctions and Rule 11 were warranted where the plaintiff "misleadingly plead the disputed information was confidential" because the First Amended Complaint "should have contained the critical fact" that the confidentiality agreement that made the information confidential had expired, which the plaintiff knew at the time if filed the First Amended Complaint).[9] Plaintiffs have admitted that they know Bankers did not

---

[9] A copy of the Order is here attached as **Exhibit H.**

provide the direction or exercise the control Plaintiffs suggest by the allegations contained in paragraphs 88, 93, 95-97, 100, and 133 of the Third Amended Complaint it did; they are, therefore, prohibited from reasserting those allegations. In reasserting them anyway, Plaintiffs have vexatiously multiplied these proceedings and should be sanctioned for doing so.

## IV.    CONCLUSION

Before they ever filed this lawsuit, the lawyers for the Plaintiffs knew or should have known that making salacious allegations in a federal court filing to support a RICO claim against Bankers came with the significant risk that sanctions would be imposed if there was not sufficient evidence to support the initial filing or the continuation of the claim.  Here, the lawyers for Plaintiffs knowingly took that risk, both in originally filing their claims and allegations against Bankers without conducting a reasonable investigation of them, and then in continuing to maintain their salacious and scandalous allegations against Bankers despite admitting that discovery revealed they had no factual basis to maintain them.  This Court should now impose the sanctions allowable under section 1927 and the Court's inherent authority to compensate Bankers for having to defend against the Sanctionable Claims and Plaintiffs' reassertion of allegations against Bankers that Plaintiffs have admitted are not true, and to deter future abusive tactics employed by the Southern Poverty Law Center and the other lawyers representing the Plaintiffs in this case.

Respectfully Submitted,

CHEHARDY, SHERMAN, WILLIAMS, MURRAY, RECILE, STAKELUM & HAYES, L.L.P.

/s/ Stephen D. Marx
STEPHEN D. MARX (#17041)
PRESTON L. HAYES (#29898)
One Galleria Boulevard,        Suite 1100
Metairie, Louisiana 70001
Telephone: (504) 833-5600
Facsimile: (504) 833-8080

*and*

23

SMOLKER   BARTLETT   LOEB   HINDS   &
THOMPSON, P.A.

/s/ Ethan Loeb
ETHAN J. LOEB (pro hac vice)
Florida Bar No. 0668338
E. COLIN THOMPSON (pro hac vice)
Florida Bar No. 0684929
ALLISON DOUCETTE (pro hac vice)
Florida Bar No. 0085577
100 North Tampa Street, Suite 2050
Tampa, FL 33602
(813) 223-3888; Fax: (813) 228-6422
***Attorneys for the Bankers Entities***


## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing document was served on all counsel of record through this Court's CM/ECF system on this 8th day of January, 2019.


/s/ Ethan J. Loeb
**ATTORNEY**