**EXHIBIT 30**



**SPLC**    Southern Poverty Law Center

Fighting Hate
Teaching Tolerance
Seeking Justice

Southern Poverty Law Center
400 Washington Avenue
Montgomery, AL 36104
334.956.8200
www.splcenter.org

**VIA US MAIL & EMAIL**

October 29, 2018

Ethan J. Loeb
Smolker Bartlett Loeb Hinds & Thompson
100 North Tampa St., Suite 2050
Tampa, FL 33602
ethanl@smolkerbartlett.com

**RE:**    *Egana, et al. v. Blair's Bail Bonds, Inc., et al.*, C.A. No. 2:17-cv-5899 (E.D. La.)

Dear Ethan:

We have reviewed your October 9 letter. While we vociferously deny your claims that Plaintiffs' allegations against Bankers run afoul of either Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927, based on the current state of discovery, we are moving to amend our complaint to withdraw Plaintiffs' Second, Third, Fourth, Fifth, and Sixth claims for relief against Bankers—those you have identified in your proposed motion for sanctions (the "Claims")—and alert the Court that your Motion to Dismiss is thus moot. We will not, however, agree to your demands to dismiss the Claims with prejudice or to pay attorneys' fees or costs to Bankers, as neither is appropriate under the circumstances.

Because Plaintiffs are withdrawing the Claims against Bankers that you identified as objectionable, there is no basis for you to file a Rule 11 motion for sanctions. The case law is clear that the purpose of the 21-day safe harbor period is to allow parties to consider and address any alleged defects. Thus, sanctions will not be granted for any alleged violations cured within that period. *See Margetis v. Furgeson*, 666 F. App'x 328, 331 (5th Cir. 2016) (Rule 11's safe harbor allows parties to avoid sanctions by withdrawing the challenged claim, and thus, the motion may be filed "if, and only if" the challenged claim is not withdrawn within the safe harbor period); *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (purpose of the safe harbor period is to provide the opportunity to withdraw or amend); *In re Black*, No. CV 16-13200, 2017 WL 3034348, at *6 (E.D. La. July 18, 2017) (safe harbor precludes imposition of sanctions). As you know, Rule 11 permits an award of fees and costs to the prevailing party. Fed. R. Civ. P. 11(c)(2). If you insist on pursuing this motion despite achieving the relief you requested, we will seek reimbursement of the fees and costs we incur opposing it.

As for your 28 U.S.C. § 1927 claim, sanctions are to be applied sparingly and are not appropriate absent a showing of bad faith, improper motive, or reckless disregard for the duty owed to the Court. *See F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) (carelessness and negligence do not support finding of recklessness, bad faith, or improper motive); *Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1256 (5th Cir. 1991) (persistence in pursuing federal claim barred by res judicata did not rise to the level of misconduct); *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991) (strict construction of § 1927 must not "dampen the legitimate zeal of an attorney in representing his client"). Imposing sanctions under § 1927 "focuses on the conduct of the litigation and not on the merits" and requires "clear and convincing evidence that every facet of the litigation was patently meritless." *Manton v. Strain*, No. CIV.A. 09-339, 2011 WL 1000964, at *6 (E.D. La. Feb. 28, 2011), *report and recommendation adopted*, No. CIV.A. 09-339, 2011 WL 976475 (E.D. La. Mar. 17, 2011) (quoting *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002) (sanctions not warranted where Plaintiffs advanced "at least some support for their

allegations"). When counsel withdraws claims against defendants upon determining that they cannot support the allegations against them, that "alone weighs in favor of not awarding attorneys' fees under Section 1927." *Id.* We are confident the Court will not find any bad faith on Plaintiffs' part in bringing the Claims against Bankers and withdrawing them at this time. *See, e.g.*, *Bailey v. Normand*, No. CIV.A. 12-2795, 2015 WL 1268325, at *2 (E.D. La. Mar. 19, 2015) (J. Triche Milazzo) (declining to award attorneys' fees in a case decided on summary judgment where "Plaintiffs had a difficult time proving the allegations of their Complaint" and learned through discovery that many of their factual allegations were false and defendants they named were not responsible, because "facts merely did not emerge until Plaintiffs were allowed discovery").

Plaintiffs acted reasonably and professionally in asserting those Claims and maintaining them until this point. In addition to re-briefing the as yet undecided arguments from your Motion to Dismiss, your proposed motion makes five primary arguments: (1) Plaintiffs did not conduct a reasonable inquiry into the facts prior to suing Bankers; (2) it was improper for Plaintiffs to bring Claims based in part on out-of-court statements implicating Bankers; (3) the Claims were contradicted and therefore precluded by the Supervising Producer Agreement; (4) the Claims were premised on Bankers being creditors; and (5) Plaintiffs should have withdrawn the Claims at some earlier point in discovery. My July 26 letter and our opposition to Bankers' Motion to Dismiss provided our positions on many of these points, but I turn to each here.

*First*, Plaintiffs conducted a reasonable inquiry and had sufficient evidentiary support to bring the Claims against Bankers. A court may consider multiple factors in determining whether an attorney has made a reasonable factual inquiry, including time available for investigation, the extent of the attorney's reliance on his client, the feasibility of pre-filing investigation, and the extent to which discovery is required to develop the factual record. *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992). Even an "imperfect" investigation may be reasonable under the circumstances. *Id.* As the Fifth Circuit has noted, in RICO cases, "[b]cause conspiracies are carried out in secret, direct proof of agreement is rare" and it resides "largely in the hands of the alleged conspirators." *Id.* at 445-46 (no sanctions where "information that the lawyers had gleaned from their investigation did provide them with grounds to believe that they could support the claim they filed"; though none of the information was conclusive, it was sufficient to create a reasonable inference "that some wrongdoing was afoot"). Information contradicting claims of wrongdoing is relevant to the merits but does not "establish that the claims had no basis in fact." *Id.*; *see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) (even weak and self-serving evidence is enough to provide support precluding sanctions); *Lucas v. Duncan*, 574 F.3d 772, 777 (D.C. Cir. 2009) (inferences or circumstantial evidence are as capable of providing evidentiary support as direct evidence); *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 390 (2d Cir. 2003) (sanctions are warranted only where allegations are utterly lacking in support).

In this case, the records Plaintiffs and putative class members provided detailed Bankers' involvement in the administration of their bonds. For instance, Mr. Egana's bail bond agreement with Blair's provides that the bond is issued by Bankers. His Bail Order binds both Mr. Egana and Bankers to pay the bond obligation if the bond is forfeited and lists both the bond amount and the premium. Bond Obligations for other putative class members do the same. But Plaintiffs did not rely on these documents alone to assert the Claims against Bankers. They questioned senior members of the Blair's management team about critical decisions relating to Mr. Egana's bail bond, ankle monitor, and payment plans. The answer— from two experienced Blair's employees on three separate occasions—was always the same. The insurance company was responsible. Another class member, Chad Lightfoot, independently provided a similar story. Blair Boutte, owner of Blair's Bail Bonds, told him that the insurance company was

requiring him to wear an ankle monitor.  Mr. Lightfoot's account was consistent with the information Plaintiffs had verified with Marcell Compass and Dawn Baptiste.  Between the documents Plaintiffs already possessed and the documented admissions from Blair's employees, Plaintiffs had more than sufficient evidentiary support to bring the Claims.  Indeed, given Ms. Baptiste's testimony that Mr. Boutte encouraged employees to deceive clients about Bankers' involvement, any further inquiries would have likely yielded the same result.

*Second*, we dispute your contention that the recorded conversations would be inadmissible at trial.  The recorded statements of Ms. Baptiste and Mr. Compass are statements of an opposing party made by the party's agents or employees within the scope of those relationships.  They are not hearsay.  Fed. R. Evid. 801(d)(2).  There is no "hearsay within hearsay" contained within the recordings, as there are no "statements" attributed to Bankers.  A "statement" is a "person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."  Fed. R. Evid. 801(a).  As the Advisory Committee Notes to Rule 801 make clear, "[t]he effect of the definition of 'statement' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion."  Ms. Baptiste's and Mr. Compass's statements regarding the "insurance company"—which Ms. Baptiste identified as Bankers—are statements regarding actions Bankers took, decisions Bankers made, and plans to consult Bankers.  They are not oral assertions by Bankers.  Thus, your concerns about unidentified declarants are unwarranted, as there is no "declarant," no "statement," and no hearsay.

*Barry v. Simmons Airlines* and *Vasquez v. Lopez-Rosario* are so factually dissimilar that they have no bearing on this case.  In *Barry*, the court found that plaintiff's claims relied upon an alleged phone call between plaintiff's current employer and a potential employer.  *Barry v. Simmons Airlines, Inc.*, 239 F.3d 366 (5th Cir. 2000).  There was no evidence that such a call took place, only plaintiff's deposition testimony that her boss informed her of a rumor that someone from her current employer called the potential employer and disparaged her.  *Id.* at *2.  Barry's boss denied conveying such a rumor.  *Id.* at *1.  Therefore, there was no evidence of the contents of the call, the speakers on the call, or even the existence of the call.  The court found that, even if Barry could testify to what her boss told her, there was still no way of knowing who was on the alleged call or what was said, as Barry admitted her boss did not know when he allegedly told her.  *Id.* at *2.  Similarly, in *Vasquez*, the hearsay evidence that Vasquez himself described as "hallway gossip" consisted of his testimony that various defendants had conveyed rumors to him regarding the reasons for his termination.  *Vasquez v. Lopez-Rosario*, 134 F.3d 28, 34 (1st Cir. 1998).  The rumors were not based on specific conversations or statements; they amounted to gossip, personal feelings, intuitions, and conclusions.  *Id.* at 31.  As such, the court excluded Vasquez's testimony on those rumors, as there was no identifiable speaker or statement.  *Id.*  Thankfully, the conversations in question in this case were recorded, so there is no dispute regarding their existence or what was said, and Ms. Baptiste readily identified the "insurance company" as Bankers.  In *Barry* and *Vasquez*, the identities of the declarants *could not be known*.  In this case, all we had to do was ask.  Thus, even if the Blair's employees' statements *about* Bankers could be interpreted as statements *by* Bankers, the declarant is not unknown.[1]

Even if the recorded statements were deemed inadmissible, it was wholly appropriate for Plaintiffs to bring claims based in part on the information disclosed in them.  As the Supreme Court has recognized, a

---

[1] Beside the fact that these cases address different factual circumstances, they were decided on summary judgment and therefore did not deal with the question of whether the hearsay facts alleged provided sufficient evidentiary support to justify bringing a claim.

suit is not frivolous, unreasonable, or without foundation merely because a plaintiff's alleged facts are not ultimately accurate.  *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421–22 (1978).  "[H]indsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success . . . [N]o matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable.  Decisive facts may not emerge until discovery or trial.  The law may change or clarify in the midst of litigation.  Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."  *Id.*; *see also Dean v. Riser*, 240 F.3d 505, 510 (5th Cir. 2001) (same).  Rule 11 specifically contemplates that "the evidentiary foundation of claims may be fleshed out through discovery."  *Dearborn St. Bldg. Assocs., LLC v. Huntington Nat. Bank*, 411 F. App'x 847, 852 (6th Cir. 2011); Fed. R. Civ. P. 11(b)(3).  Nor does the partial reliance on inadmissible evidence merit a finding that a claim was frivolous or lacked foundation.  *See Beck v. Muskingum Cnty., Ohio*, No. 2:11-CV-155, 2012 WL 5845066, at *2 (S.D. Ohio Nov. 16, 2012); ("[n]either the award of summary judgment to defendants nor plaintiff's failure to produce admissible evidence equate with a determination that plaintiff's claims were without foundation when the Complaint was initially filed"); *Joseph v. Weber Marine, Inc.*, No. CIV.A. 11-559, 2012 WL 1247221, at *2 (E.D. La. Apr. 13, 2012) ("it cannot be said that the case lacked a foundation where the details surrounding [factual allegations] were a proper subject of discovery"); *In re Enron Corp. Sec., Derivative & Erisa Litig.*, No. CIV.A. H013624, 2005 WL 3504860, at *6 (S.D. Tex. Dec. 22, 2005) (no sanctions where plaintiff based complaint in part on "contested hearsay allegations by a third party").  We expected discovery to lead to indisputably admissible evidence.  Had Blair's statements about Bankers been truthful, Ms. Baptiste and Mr. Compass would have testified to those facts at trial, without the need to introduce the recordings.

*Third*, production of the Supervising Producer Agreement ("SPA") in no way precluded Plaintiffs' Claims alleging that Bankers took an active role in directing the affairs of the enterprise.  The SPA is not as clear as you claim it is.  For instance, you cite a provision stating that bond premiums are "due and payable at the time of the issuance" of the bond, apparently for the proposition that Bankers has no motive to meddle in Blair's collections practices.  Yet, another provision provides that Blair's will establish a fund to protect Bankers against "any failure to collect or pay premium," casting doubt upon Bankers' motives.  Regardless, the Claims were based on credible evidence that Bankers acted inconsistently with the SPA's terms.  As we explained in the paragraph cited on P. 5 of your proposed motion (which you inexplicably characterize as a fraud on the court), even if the SPA were unambiguous that Bankers had no interest and was to take no part in Blair's collection activities, the SPA does not foreclose the possibility that Bankers did, *in fact*, direct Blair's to collect.  Three Blair's employees informed Plaintiffs and putative class members on at least four occasions that Bankers made critical decisions relating to payments for their bonds.  If contractual terms were conclusive and dispositive proof that a party acted in accordance with those terms, no claim for breach of contract could ever be sustained.  *See, e.g.*, *Allen v. Seacor Marine*, 423 F. Supp. 2d 653, 658 (S.D. Tex. 2003) ("Certainly a contract's language alone is not dispositive because principals could easily avoid any liability merely by inserting magic words—'the principal retains no control over *Company X's* work because *Company X* is an independent contractor'—in all of their subcontracts despite the fact that the principal retains control over the details of the subcontractors' work *in fact*") (emphasis in original).

*Fourth*, there is simply no requirement that Bankers be "creditors" for Plaintiffs to bring and maintain the Claims against them.  You appear to recognize this, as you consistently hedge in your articulation of this argument.  *See* July 5, 2018 LF E. Loeb at 2 ("you continue to allege claims against Bankers that assume and rely on the *necessary implicit allegation* that Bankers is a creditor"); Bankers Mot. to Dismiss at 3 ("Plaintiffs continue to allege . . . that Bankers is an insurer, and *improperly imply* that this fact somehow

4

also makes the Bankers Defendants 'creditors'") ; Bankers Proposed Rule 11 Mot. at 6 ("it makes no more sense for Bankers to *essentially be considered creditors* for the RICO or state law tort claims . . . than it did for TILA") (emphasis added). As I explained in my July 26 letter and again in our opposition to your Motion to Dismiss, it was sufficient that Bankers was alleged to participate in the *collection* of the debt, even if Bankers was not itself the lender. *See United States v. Biasucci*, 786 F.2d 504, 513 (2d Cir. 1986) (affirming convictions of individuals who were not the directors of the loan business but who participated in facilitating the business, shared in its profits, or assisted in collecting from victims, even if they had no knowledge the loans were usurious, because all that RICO requires is proof of an unenforceable debt incurred in connection with the business of lending money and "that the defendant aided collection of the debt in some manner").

*Fifth*, our timing for withdrawing the Claims is appropriate. You have suggested that production of the SPA, interrogatory responses from Bankers, and admissions from Blair's should have triggered our withdrawal of the Claims. For the reasons stated above, the SPA is not dispositive of Plaintiffs' Claims and therefore did not affect our decision to withdraw. Interrogatory responses and responses to requests for admission, though verified, are lawyer-drafted, self-serving, and no substitute for cross-examination of actual witnesses. *See, e.g.*, *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983) (interrogatories were an inadequate substitute for cross-examination on subjects that require "rigorous in-court scrutiny"); *Treharne v. Callahan*, 426 F.2d 58, 64 (3d Cir. 1970) (it was fundamental error not to instruct jury that interrogatory responses, admitted solely because witness died before plaintiff could depose him, are not entitled to the same weight as testimony subject to cross-examination). Indeed, both Bankers and Blair's have made assertions that turned out to be untrue. Blair's represented that it had produced Captira records for a sample of its clients, but Ms. Baptiste's deposition revealed that the critical section on payment history was missing. Bankers represented that it only interacted with Blair's on bonds in excess of Blair's underwriting authority or on forfeitures. But Ms. Baptiste testified that a Blair's administrator made weekly reports to Bankers on bonds, and Brooke Faber testified that Bankers routinely inquire about bonds valued under $250,000. For this very reason, Plaintiffs are not required to take counsel's statements at face-value before taking the drastic step of withdrawing Claims. And, of course, the timing of your own productions has affected our ability to assess the evidence in a timely fashion. We requested documents on October 12, 2017 that you ultimately produced on October 3, 2018. Expecting us to withdraw the Claims before you produced documents requested a year earlier is unreasonable.

We are withdrawing the Claims now because our review of the documentary record and testimony to date leads us to the conclusion that we have insufficient evidence to support them. As you made clear at Ms. Baptiste's deposition, Bankers and Blair's have coordinated their defense. Thus, we recognize it is unlikely that future depositions of Blair's and Bankers employees will deviate materially from the position both have taken in discovery thus far. However, we cannot dismiss the Claims with prejudice. Given Blair's policy of deceiving clients, and both Blair's and Bankers' lack of transparency about the existence of documents, we cannot foreclose the possibility of pursuing the Claims in the future.

I am attaching a copy of the Third Amended Complaint, which we will seek leave to file at five o'clock CT tomorrow, October 30.  Please let me know prior to then if you intend to oppose our motion.


Sincerely,


Ivy Wang

**cc:**

Colin Thompson
Allison Doucette
Susan Morrison
Stephen Marx
Rochelle Brown

6