UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD EGANA ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-5899** |
| **BLAIR'S BAIL BONDS INC. ET AL.** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court are Blair's Bail Bonds, Inc. and New Orleans Bail Bonds, LLC's (the "Blairs Defendants") Motion to Dismiss the Second Amended Complaint (Doc. 137) and Motion to Dismiss the Third Amended Complaint (Doc. 191); and A2i LLC, Alternative to Incarceration NOLA, Inc., and Alternative to Incarceration, Inc.'s (the "A2i Defendants") Motion to Dismiss the Second Amended Complaint (Doc. 139) and Motion to Dismiss the Third Amended Complaint (Doc. 195). For the following reasons, the Motions are DENIED.

## BACKGROUND

On motion of the Defendants, this Court previously dismissed several of the claims alleged by Plaintiffs in their First Amended Complaint, granting

Plaintiffs leave to amend their Complaint to remedy the deficiencies identified. Thereafter, Plaintiffs filed a Second Amended Complaint realleging many of the claims previously dismissed. Defendants filed another round of motions to dismiss. While those motions were pending, Plaintiffs were granted leave to file a Third Amended Complaint. The Third Amended Complaint removed many of the allegations against Defendants Bankers Insurance Company, Inc., Bankers Surety Services, Inc., and Bankers Underwriters, Inc., but retained the allegations against the Blairs and A2i Defendants. Still, the Blairs and A2i Defendants filed motions to dismiss the Third Amended Complaint setting forth substantially similar arguments to those in their motions to dismiss the Second Amended Complaint. This Court will address these motions collectively as they relate to the Third Amended Complaint.

The Third Amended Complaint realleges the facts regarding the bond obtained by Plaintiffs Tiffany Brown and Samantha Egana on behalf of Plaintiff Ronald Egana. Plaintiffs allege that they entered into an agreement with the Blairs Defendants to post bail for Mr. Egana in exchange for a $3,275.00 premium to be loaned to Plaintiffs and paid back in installments. Plaintiffs were also required to consent to having their payments applied to a preexisting balance that Mr. Egana owed to Defendants, which amounted to $3,800.00.

As a condition of the loan, Defendants required Mr. Egana to wear an ankle monitor supplied by the A2i Defendants, and he was charged $10 per day by the A2i Defendants for the use of the ankle monitor. Plaintiffs allege that following the agreement, Defendants threatened, harassed, and kidnapped Mr. Egana in an effort to extort payments from him and the other

Plaintiffs. They allege that the Blairs and A2i Defendants employed bounty hunters to threaten and coerce payments of bail bonding fees and ankle monitoring fees. For instance, Plaintiffs allege that on three separate occasions, bounty hunters picked Mr. Egana up, handcuffed him, brought him to the Blairs Defendants' office, and called his mother threatening that he would be brought to jail if she did not immediately bring payment of some amount owed pursuant to the bonding agreement. Plaintiffs allege that Mr. Egana would not be released by the bounty hunters until his mother tendered payment. Plaintiffs allege that Mr. Egana was even detained on his way to a court hearing in an unrelated criminal matter. Plaintiffs ultimately paid more than $6,000 to the Defendants, and Mr. Egana was nonetheless surrendered to the court.

Plaintiff's Third Amended Complaint ("Complaint") also adds facts regarding other individuals who entered into bonding agreements with the Blairs Defendants. The Complaint alleges that Reynaud Variste entered into a bonding agreement with the Blairs Defendants and was subjected to similar threats and intimidation to extort payment. The Complaint alleges that Chad Lightfoot and Joseph Winzy entered into separate bonding agreements with the Blairs Defendants, and each was required to wear and pay for an ankle monitor provided by the A2i Defendants. Lightfoot reported being threatened and intimidated by bounty hunters from the A2i Defendants to make additional payments beyond what the bonding agreement called for. Winzy reported that agents of the A2i Defendants made comments to him indicating that they detained clients who did not make payments. The Complaint further

alleges that others would report the same treatment but are "afraid of being named [in this action] for fear of being arrested or retaliated against."[1]

Plaintiffs bring claims for violations of the Truth in Lending Act ("TILA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Louisiana Racketeering Act. They also bring state law claims for false imprisonment, conversion, breach of contract, and consumer credit law violations. Plaintiffs seek to represent others who are similarly situated and to obtain damages, equitable relief, attorneys' fees, and costs. In their Motions to Dismiss, the Blairs Defendants move to dismiss Plaintiffs' claims under RICO and the Louisiana Racketeering Act for failure to state a claim. The A2i Defendants move to dismiss Plaintiff's RICO, Louisiana Racketeering Act, and conversion claims against them.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[2] A claim is "plausible on its face" when the pleaded facts allow the court to "draw reasonable inference that the defendant is liable for the misconduct alleged."[3] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[4] The court need not, however, accept as true legal conclusions couched as factual allegations.[5] To be legally

---

[1] Doc. 188, p. 25.
[2] Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[3] *Id.*
[4] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[5] *Iqbal*, 556 U.S. at 678.

sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[6] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[7] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[8]

## LAW AND ANALYSIS

### A. Substantive RICO Claims

Plaintiffs bring three claims alleging violations of RICO and Louisiana's racketeering laws: (1) a RICO claim based on collection of unlawful debt, (2) a RICO claim based on kidnapping, extortion, and extortionate extension of credit, and (3) a racketeering claim under Louisiana law. To state a claim under RICO and the Louisiana Racketeering Act, "a plaintiff must allege: 1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity."[9] The A2i and Blairs Defendants each allege that Plaintiffs' Complaint fails to establish a pattern of racketeering activity. The A2i Defendants also allege that Plaintiffs fail to adequately plead (1) that the A2i Defendants operated or managed the alleged RICO enterprise, or (2) that they

---

[6] *Id.*
[7] *Lormand*, 565 F.3d at 255–57.
[8] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).
[9] Elliott v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989). The Louisiana Racketeering Act was "modeled after the federal 'RICO' legislation," and courts therefore look to "federal interpretations for guidance." State v. Nagi, 2018 WL 1704253 (La. App. 1 Cir. 2018); *see* State v. Davenport, 2017 WL 4700652 (La. App. 4 Cir. 2017).

5

had knowledge of any alleged debts or extensions of credit between the Blairs Defendants and their clients. This Court will address each argument in turn.

   1. *Pattern*

Movants argue that Plaintiffs have failed to establish a pattern of racketeering activity or threat of future conduct. To establish a pattern of racketeering activity, Plaintiffs must show "two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity."[10] "Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."[11] "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."[12] If a substantial period of time cannot be established, "liability depends on whether the threat of continuity is demonstrated."[13] "[T]he threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business."[14]

Plaintiffs assert that the allegations of the Complaint establish open-ended continuity by demonstrating that the predicate acts are Defendants' regular way of conducting business. The predicate acts alleged by Plaintiffs occurred

---

[10] Jones v. Liberty Bank & Tr. Co., 461 F. App'x 407, 409 (5th Cir. 2012).
[11] H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989).
[12] *Id.* at 242.
[13] *Id.*
[14] *Id.*

over the course of approximately one year to at least three different individuals. Each individual was seized, held against his will, and coerced into making additional payments to Defendants. The Complaint also alleges similar complaints by other anonymous individuals.

The Fifth Circuit has cautioned against turning "the continuity prong into a stringent pleading requirement."[15] Continuity may be shown in a number of ways and "depends on the specific facts of each case."[16] This Court finds that Plaintiffs' allegations are sufficient to establish the continuity prong. Plaintiffs have alleged that Defendants regular way of conducting their bail-bonding business involved the use of bounty hunters to seize, arrest, intimidate, threaten, and coerce clients into making additional payments owed on contracts with illegal terms. Plaintiffs' reference to at least three individual clients who suffered this treatment makes their allegations plausible. "Unlike [the] precedents identifying a single illegal transaction, there are multiple victims, and there is no reason to suppose that this systematic victimization . . . would not have continued indefinitely."[17] Accordingly, Plaintiffs have adequately plead the continuity prong of their RICO claims, and Movants' argument to the contrary therefore fails.

*2. A2i Defendants' Operation or Management*

The A2i Defendants next allege that the Complaint fails to set forth facts establishing that they operated or managed the affairs of the RICO enterprise in any way. To be liable under RICO, one must have "participated in the

---

[15] Abraham v. Singh, 480 F.3d 351, 355–56 (5th Cir. 2007).
[16] *Id.*; H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242 (1989).
[17] *Abraham*, 480 F.3d at 356.

7

operation or management of the enterprise itself."[18] The Supreme Court has explained, however, that the operation and management test "is not limited to upper management."[19] "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management."[20]

This Court finds that the allegations of the Complaint are sufficient to establish the A2i Defendants' participation in the alleged RICO enterprise. The Complaint alleges that the A2i Defendants employed bounty hunters to seize and coerce payment from clients of the Blairs Defendants and that they were aware that their standard rates were contrary to law when charged to those clients. These allegations, when viewed in a light most favorable to Plaintiffs, are sufficient to establish that the A2i Defendants' were involved in the operation of the RICO enterprise.

*3. Unlawful Debt*

The A2i Defendants next argue that Plaintiffs have failed to state a claim against them under RICO for the collection of unlawful debt. Plaintiffs allege that the Blairs Defendants permitted some of their clients to pay off the bond fee over time but required that those clients provide collateral or wear an ankle monitor provided by the A2i Defendants in exchange for the loan. Plaintiffs allege that the ankle monitoring fees charged during the loan period created a usurious interest rate on the credit extended by the Blairs Defendants. The A2i Defendants argue that they cannot be liable for any usurious rate charged

---

[18] Reves v. Ernst & Young, 507 U.S. 170, 183 (1993).
[19] *Id.* at 184.
[20] *Id.*

because there is no allegation that they had knowledge of the extension of debt. The A2i Defendants point out that the Complaint does not allege that they have any role in deciding which of Blairs clients is required to wear an ankle monitor.

The parties agree that in order to succeed on a RICO claim based on the collection of unlawful debt, Plaintiffs must show that the A2i Defendants acted knowingly, willfully, and unlawfully. Plaintiffs contend that the allegations of the Complaint are sufficient to create the inference that the A2i Defendants were aware that the Blairs Defendants were extending credit to their customers. Plaintiffs point out that the Blairs Defendants often collected payments from their clients for amounts owed on bail bond premiums and ankle monitoring fees at the same time and that the A2i Defendants received notice when these payments were collected. Indeed, Plaintiffs further allege that some of the bounty hunters worked as agents for both the Blairs and A2i Defendants. The close working relationship between these sets of defendants creates a reasonable inference that the A2i Defendants were aware of the extension of credit by the Blairs Defendants.[21] Accordingly, this Court finds that when viewing the allegations of the Complaint in a light most favorable to Plaintiffs, there are sufficient allegations to support a RICO claim for the unlawful collection of debt against the A2i Defendants.

---

[21] The A2i Defendants misconstrue Plaintiffs' argument as asserting that the A2i Defendants "should have known" about the extension of debt. Rather, Plaintiffs argue that the facts allege create an inference that they did in fact know.

### B. Conspiracy to Commit RICO Claims

Movants next argue that Plaintiffs have failed to establish a conspiracy to violate RICO between the defendants. Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate" the substantive portions of RICO. To allege that a defendant has engaged in a RICO conspiracy, a plaintiff must plead "(1) that two or more people agreed to commit a substantive RICO offense and (2) that [they] knew of and agreed to the overall objective of the RICO offense."[22] "The core of a RICO conspiracy is the allegation of an agreement between the alleged conspirators to commit the predicate acts. Conclusory allegations of an agreement or conspiracy are not sufficient, the plaintiff must allege facts implying an agreement to commit predicate acts of racketeering."[23] Movants allege that the allegations of the Complaint are insufficient to show an agreement between the defendants to commit the predicate acts.

Plaintiffs respond that the Complaint alleges facts showing that both the A2i and Blairs Defendants agreed to the common purpose of charging and collecting exorbitant fees and seizing and coercing clients into payment through bounty hunters hired by both parties. This Court agrees. The Complaint alleges that the Blairs and A2i Defendants worked together to charge excessive rates to Blairs' clients who were installed with an ankle monitor. It alleges that the A2i Defendants market their services to bail bonding companies and are aware that their charges are excessive and

---

[22] Chaney v. Dreyfus Serv. Corp., 595 F.3d 219, 239 (5th Cir. 2010).
[23] Glob. Oil Tools, Inc. v. Barnhill, No. 12-1507, 2012 WL 5866139, at *11 (E.D. La. Nov. 19, 2012) (J. Barbier) (internal quotations omitted).

contrary to law.[24] The Complaint further alleges that bounty hunters serve as agents for both sets of defendants to collect both ankle monitoring fees and bail bond premiums through seizure and coercion.[25] This Court finds that these allegations are sufficient to show that each set of defendants knew of and agreed to the overall objective of the RICO conspiracy.

### C. Conversion

Finally, the A2i Defendants argue that the Complaint fails to state a claim against them for conversion. The Complaint alleges that the Blairs and A2i Defendants are liable for state law conversion for the bail bond and ankle monitoring charges that exceed those allowed by law. The A2i Defendants argue that the laws limiting bail bond premiums do not apply to them. Louisiana Revised Statute § 22:855 states, "No insurer or its officer, employee, producer, or other representative shall charge or receive any fee, compensation, or consideration for insurance which is not included in the premium quoted to the insured." Plaintiffs argue that this prohibition encompasses the A2i Defendants, who were directly involved in the charging and collecting of money beyond the legally allowed amount. Considering the allegations in the light most favorable to Plaintiffs, this Court holds that the Complaint contains sufficient allegations to state a claim against the A2i Defendants for conversion. Plaintiffs allege that the two sets of defendants worked in tandem to set and collect the alleged illegal fees. Accordingly, Plaintiffs have pleaded sufficient facts that one could find that the A2i

---

[24] Doc. 188, ¶45.
[25] Doc. 188, ¶49.

Defendants acted as "representatives" of the Blairs Defendants in charging illegal insurance premiums under the terms of Louisiana Revised Statutes § 22:855.

## **CONCLUSION**

For the foregoing reasons, the Motions are DENIED.

New Orleans, Louisiana this 11th day of March, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**