**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

RONALD EGANA, ET AL.                                             CIVIL ACTION

VERSUS                                                          NO. 17-5899

BLAIR'S BAIL BONDS, INC., ET AL.                                SECTION "D" (3)

**ORDER**

Before the Court is Bankers Insurance Company, Inc., and Bankers Surety Services, Inc.'s

Motion for Sanctions Against Plaintiffs' Counsel, Southern Poverty Law Center, under 28 U.S.C.

§ 1927 and the Court's Inherent Authority. [Doc. #410]. Plaintiffs have filed an opposition to the

motion, [Doc. #412], defendants Bankers Insurance Company, Inc. and Bankers Surety Services,

Inc. (collectively, "Bankers") have filed a reply. [Doc. #416]. Having reviewed the pleadings and

the case law, the Court rules as follows.

**I.      Background**

The underlying facts of this lawsuit have been outlined before, and this Court need not do

so again. *Egana v. Blair Bail Bonds, Inc.*, Civ. A. No. 17-5899, 2018 WL 2463210 (E.D. La. June

1, 2018).

**II.     The Parties' Positions**

**A.      The Motion for Sanctions**

Recognizing that the District Court denied its earlier, similar motion for sanctions against

counsel for plaintiffs on May 13, 2019 [Doc. #245], Bankers contends that both it and the District

Court were unaware at the time of the denial that plaintiffs and their counsel had fabricated

discovery answers to support their claims. Bankers maintains that once their fabrications were

revealed, counsel for plaintiffs, the Southern Poverty Law Center ("SPLC") settled with all

defendants on behalf of plaintiffs. Bankers notes that as part of the settlement, it paid no monies

to plaintiffs and it has not changed its working practices. As part of that settlement, the SPLC issue

a letter of apology to Bankers in which it admitted that the allegations against Bankers were not

supported by the evidence.

Bankers maintains that the SPLC unreasonably and vexatiously multiplied these

proceeding as to them. Bankers maintains that the SPLC broadcasted their allegations against

Bankers all over the internet, including on its website and in a front-page article in the New York

Times. After notifying the SPLC that they intended to file its earlier motion for sanctions, plaintiffs

filed their motion for leave to file their third amended complaint. In the complaint, plaintiffs

dismissed all but one state-law claim against Bankers and admitted that the discovery conducted

had not support the other claims against Bankers.

One of the claims dismissed by plaintiffs against Bankers was their claim under the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Bankers

maintains that the SPLC, after dismissing the RICO claim, continued to allege in the complaints

that Bankers participated as some sort of a co-conspirator in a RICO enterprise. Bankers then filed

a motion to strike the allegations and motions for sanctions. [Doc. ##183, 202]. To support their

arguments in the opposition to the motions, plaintiffs cited to the testimony of Chad Lightfoot and

Joseph Winzy, who had allegedly provided statements to plaintiffs and to their attorneys to support

the allegations about the involvement of Bankers in the conspiracy. [Doc. #207].  Lightfoot and

Winzy allegedly informed plaintiffs that they were told by defendant Blair's Bail Bonds, Inc.

("Blair's") of Bankers' involvement. Although Lightfoot and Winzy only spoke to plaintiffs'

attorneys and not to plaintiffs themselves, Bankers maintains that plaintiffs' responses to the

interrogatories implied that they had spoken directly to plaintiffs.

The District Court denied Bankers' motion, finding that the SPLC had not acted in bad faith by relying on the hearsay statements of Lightfoot and Winzy about Bankers to assert claims against it in their complaint. [Doc. #241]. After the District Court denied the motion, Bankers alleges that it discovered that the SPLC had fabricated the statements of Lightfoot and Winzy and their interactions with Bankers.

As an example, Bankers points out that plaintiffs ultimately testified that they had never spoken to nor did they know Lightfoot or Winzy. [Doc. #410-8 at pp. 4-5; Doc. #410-9 at pp. 4-5]. For their part, Lightfoot and Winzy also testified that they did not know plaintiffs nor had they ever spoken to them. [Doc. #410-10 at pp. 4-6; Doc. #410-12 at p. 3]. Winzy also testified that he did not recall anyone at Blair's ever mentioning Bankers. [Doc. #410-12 at p. 3]. Bankers contends that the SPLC relied on fabricated information and suborned false interrogatory answers to argue that the claims of plaintiffs against Bankers had merit and to successfully avoid an initial motion for sanctions.

Bankers also maintains that the SPLC attempted to renege on the settlement agreement and to renegotiate the terms of the agreement. Bankers argues that after the SPLC agreed to the terms of the settlement agreement including the language in the apology letter, the SPLC attempted to alter the language in the apology letter and refused to sign the settlement agreement.

Lastly, Bankers briefly outlines several areas of conduct that it argues supports its request for sanctions. Bankers contends that the SPLC pursued a claim against Bankers – namely, the claim of plaintiffs under state contract law – for which plaintiffs possessed no private right of action. It also maintains that the SPLC moved for summary judgment on a claim that plaintiffs had

not pleaded. These actions, Bankers asserts, vexatiously and unreasonably multiplied these proceedings against it.

Bankers argues that choosing to pursue a claim with no evidentiary support constitutes grounds for sanctions. Bankers contends that the actions outlined above constitute bad faith on the part of the SPLC.  Citing case law, Bankers notes that courts have held that public interest firms are not shielded from sanctions for bad faith conduct. Bankers asks the Court to sanction the SPLC for its unwarranted conduct under 28 U.S.C. § 1927 or the Court's inherent authority.

### B.      Plaintiffs' Opposition

The SPLC maintains that both it and plaintiffs took numerous steps to investigate the claims of plaintiffs against all three defendants, including Bankers. For example, it notes that plaintiffs audio recorded three separate conversations with two long-time employees of Blair's in which the employees informed plaintiffs that the "insurance company" was involved in decisions about whether plaintiff Ronald Egana had to wear an ankle monitor, whether Egana was making sufficient payments, and whether to surrender Egana to jail. [Doc. ##207-1, 207-2, and 207-3]. The SPLC argues that they then obtained documents that revealed that Bankers had issued the bond and promissory note, acted as the surety on Egana's bond, and issued a power of attorney to Blair's for Egana and others. [Doc. ##207-4, 207-5, 207-6]. It maintains that no other insurance company was named in these documents.

Based on these audio recordings and documents, the SPLC notes that it reasonably concluded that Bankers was the insurance company referenced by Blair's employees and that it played a substantial role in Egana's ankle monitor, overpayment, and ultimate surrender to jail. Plaintiffs thus filed their complaint and included these allegations against Bankers.

After discovery began, the SPLC deposed Dawn Baptiste, one of the employees of Blair's who had informed plaintiffs about the role of the insurance company. Baptiste informed the SPLC that her statements were not true. [Doc. #207-9 at pp. 8-10, 27-29]. Realizing that other witnesses would corroborate Baptiste, and less than two weeks later, the SPLC moved for leave to file plaintiffs' Third Amended Complaint that removed the Racketeering Influenced and Corrupt Organization Act ("RICO"), false imprisonment, and conversion claims against Bankers, leaving only a claim brought under state contract law for overcharging for bail bonds. [Doc. #168].

The SPLC then spoke to numerous putative class members, including Winzy and Lightfoot, who also informed it that they had had similar experiences to Egana with Blair's. Specifically, six other witnesses testified that Blair's had mentioned an "insurance company" when demanding payments or requiring ankle monitors. [*See, e.g.*, Doc. 412-1, Ex. E; *id.* Ex. F].

Bankers then propounded 93 interrogatories and 53 requests for production on plaintiffs, which sought information known to both plaintiffs and their attorneys. The SPLC argues that that because the interrogatories asked for information known to plaintiffs "as well as his or her agents, representatives, and persons acting on his or her behalf, including your attorneys" Bankers' argument that the SPLC should be sanctioned for including information known only to it and not to plaintiffs is specious. [Doc. #410-5 at pp. 5-6].

The SPLC also contends that the testimony of Lightfoot is consistent with the responses of plaintiffs to Bankers' interrogatories. The SPLC maintains that Lightfoot testified that when he pointed out to Boutte that the ankle monitor was not court-ordered, Boutte stated that "the insurance company required him to have it on as part of my bond." [Doc. #410-1 at pp. 7-8]. He also testified that Boutte said he "needed to make the ankle monitor payments" to avoid jail, and

he had to sign a new contract requiring higher payments for the monitor. [*Id.* at pp. 6, 8]. As to Winzy, the SPLC maintains that he simply failed to recollect two years after the initial meeting with Boutte that anyone at Blair's told him about an insurance company, but it argues that it should not be sanctioned for inconsistencies in a witness's recollection. Moreover, it contends that there were numerous other witnesses who supported the allegations in the complaint, and the failure of Winzy to recollect that he had originally informed the SPLC that Blair's had mentioned an insurance company is not a reason to infer bad faith on the part of SPLC.

With regard to the apology letter agreed to in the settlement agreement, the SPLC maintains that it simply assumed that the confidentiality that the SPLC and Bankers had discussed during settlement negotiations applied to the apology letter. When the SPLC maintained its position, Bankers called this Court, and this Court found that the issue of confidentiality should have been negotiated, and it was not. Afterwards, the SPLC signed the letter and maintains that this dispute cannot lead to a finding of bad faith. It contends that if it is liable for sanctions, Bankers is as well. It notes that the parties agreed that plaintiffs would dismiss their claims against Bankers, but when Bankers sent them the settlement documents, it included a final judgment as to Bankers. A final judgment is different from a voluntary dismissal of claims, the SPLC asserts, and if it is sanctioned, Bankers should be as well for not following the terms of the settlement agreement.

The SPLC argues that this motion is no different than the earlier motion for sanctions, except as to any discussion now of the settlement agreement. It thus contends that this Court cannot revisit the earlier determination of the District Court that the motions lacks merit and must be denied. The SPLC maintains that Bankers willfully misinterpreted the interrogatory response of plaintiffs when they knew it was false, and it should be sanctioned under 28 U.S.C. § 1927.

### C.  Bankers' Reply

Bankers contends that its interrogatories asked plaintiffs to inform it of any person who had identified "any Bankers entity," not "the insurance company." [Doc. #416 at pp. 4-5]. Bankers argues that the SPLC now attempts to claim that the responses to the interrogatories that implicated an "insurance company" were proper to interrogatories that asked about "any Bankers entity" specifically. [*Id.*]. Bankers maintains that this is a revisionist argument that does not mask the fact that the responses of plaintiffs to the interrogatories were untrue. Bankers then generally repeats its arguments from its memorandum in support of this motion.

Bankers also maintains that the SPLC not only wanted the apology letter to remain confidential, but it also sought to change the terms of the settlement agreement.. Bankers notes that they had to contact this Court, who refused to alter the terms of the settlement agreement read into the record.

## III.  Law and Analysis

Under 18 U.S.C. § 1927, the district court must find that the sanctioned attorney multiplied the proceedings both "unreasonably" and "vexatiously." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002); *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994). This requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). Section 1927 authorizes sanctions that are associated with "the persistent prosecution of a meritless claim." *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991) (citation omitted) (internal quotation omitted). The courts often use repeated filings despite warnings from the court, or other proof of excessive litigiousness, to support imposing sanctions. *Nat'l Ass'n of Gov't Employees v. Nat'l Fed'n of Fed.*

*Employees*, 844 F.2d 216, 224 (5th Cir. 1988). To prevent the courts from dampening "the legitimate zeal of an attorney in representing her client," *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991),the Fifth Circuit has interpreted Section 1927 as penal and construed it in favor of the party sought to be sanctioned. *FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994).

A district court has the inherent authority to impose sanctions "in order to control the litigation before it." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010); *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 703 (5th Cir. 1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The court may also use that power to sanction conduct, *see Chambers*, 501 U.S. at 44, if it is "in direct defiance of the sanctioning court," *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993), or constitutes "disobedience to the orders of the Judiciary," *Chambers*, 501 U.S. at 44. Inherent power, however, "may be exercised only if essential to preserve the authority of the court. . . ." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

This Court does not find that the alleged conduct rises to any sanctionable conduct under Section 1927 or its inherent authority. The SPLC did not multiply the proceedings both unreasonably and vexatiously. The Court finds no bad faith, improper motive, or reckless disregard of any duty owed to this Court. This Court has no reason to control the litigation before it, and the SPLC did not violate an order of this Court. Just as the District Court found, the evidence submitted here – which had also been submitted to the District Court – supported the allegations in the complaint that an "insurance company" was involved in the direction of some of the actions taken by Blair's and that Bankers was that insurance company. [Do. ##207-1, 207-2, 207-3, 207-4, 207-5, 207-6]. No other insurance company was revealed by the discovery that the SPLC and plaintiffs

conducted, and it was not unreasonable for the SPLC to draw the inference that when the employees of Blair's mentioned the "insurance company" as the driving force behind their actions, that insurance company was Bankers. Simply because Bankers' interrogatories called for information about any "Bankers entity" and the SPLC interpreted those interrogatories more broadly than Bankers would have liked does not warrant sanctions. Indeed, had the SPLC narrowly interpreted the interrogatories, this Court would have undoubtedly received a motion to compel. "Plaintiffs have shown that they reasonably investigated their claims, used discovery to confirm those allegations, and dismissed claims when discovery showed that the claims may no longer be viable." [Doc. #245 at p. 6]. The only remaining claim against Bankers at that point was a state-law claim for violation of a contract.  While Bankers may contend that plaintiffs pursued this claim even though they had no individual right of action, that is a legal decision best left to the courts for resolution. Parties do not determine who has a valid claim against them.  "Section 1927 sanctions are not to be awarded lightly," *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 479 (5th Cir. 2012), and this Court declines to award sanctions for responses to interrogatories after plaintiffs and the SPLC had drawn a conclusion from evidence that they had uncovered.

Moreover, the argument that sanctions are warranted because plaintiffs responded to the discovery requests propounded by Bankers with information that they did not know personally but that the SPLC knew is specious at best. The interrogatories specifically state: "The terms 'you' and 'your' refer to the person to whom these Interrogatories are directed as well as his or her agents, representatives, and persons acting on his or her behalf, ***including your attorneys***." [Doc. #412-1, Ex. D]. The same phrase is repeated in the second set of interrogatories propounded by Bankers on plaintiffs. [Doc. #412, Ex. L]. The discovery requests explicitly called for information

9

know by plaintiffs *and their attorneys*. Accordingly, that the SPLC included information in the discovery responses that only it knew does not warrant sanctions.

Moreover, this Court takes judicial notice of the fact that disputes related to the exact language or confidentiality of a settlement agreement after the parties put a settlement on the record are common in the courts. Motions are often filed to enforce a settlement agreement. *See McGovern v. v. Enter. Restoration Servs., L.L.C.*, Civ. A. No. 19-12525, 2020 WL 2495730 (E.D. La. May 14, 2020); *Barth v. Mut. Of Omaha Ins. Co.*, Civ. A. No. 17-182, 2018 WL 10772695 E.D. La. July 19, 2018).   Most parties leave it at that and cut their losses. Not so, the parties here, who decided that a dispute over sanctions was the proper course of action.  While the conduct at issue here by both parties appears to be no more than a disagreement and, at the very least, a misunderstanding, such conduct does not warrant sanctions.

## IV.    Conclusion

Accordingly, for the reasons outlined above,

**IT IS ORDERED** that Bankers Insurance Company, Inc., and Bankers Surety Services, Inc.'s Motion for Sanctions Against Plaintiffs' Counsel, Southern Poverty Law Center, under 28 U.S.C. § 1927 and the Court's Inherent Authority [Doc. #410] is DENIED.

New Orleans, Louisiana, this 27th day of October, 2020.

**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**